**Josephine FOSTER, Plaintiff,**

**v.**

**UNITED STATES of America, a sovereign power, First Doe, Second Doe, Third Doe and Fourth Doe, Defendants.**

**Civ. A. No. 3895.**

United States District Court
D. New Mexico.
June 29, 1959.

A. T. Montoya, Albuquerque, N. M., and Edwin L. Felter, Santa Fe, N. M., for plaintiff.

James A. Borland, U. S. Atty., Joseph C. Ryan, Asst. Dist. Atty., Albuquerque, N. M., for defendants.

HATCH, Chief Judge.

This is an action brought by Josephine Foster against the United States, seeking recovery for the death of her two children, Mary Julia Toribio, age seven, and Crisencio Toribio, age four. Recovery is sought under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. It is alleged generally that plaintiff resides on the east side of a canal or irrigation ditch which runs through the small Indian Pueblo of Cochiti. This canal was constructed in the year 1932 by the Middle Rio Grande Conservancy District. Under a contract between the Conservancy District and the United States, acting through the Department of Interior, Bureau of Reclamation, certain construction and maintenance of the canal was undertaken by the Bureau of Reclamation. A bridge across the canal was constructed at sometime, the date is not certain. There were no guard rails or other protection on the sides of the bridge. Sometime before June 17, 1957, again the date is uncertain, a fence had been erected along a side, or the sides, of the canal. This fence, or fences, had been allowed to fall into a state of disrepair, but when the fence became in such state is not disclosed by the evidence, and on the date in question there was no safeguard or protection to keep children or others away from the canal and the waters therein.

From the evidence and the pleadings it appears that on the morning of June 17, 1957, at about the hour of nine o'clock, the two children left their mother's home to go to the west side of the canal, where an aunt lived and whom they frequently visited for the purpose of playing with another child, presumably of their own age.

When the children first began going to the aunt's their mother went with them to show them the way. After they had learned the way she permitted them to go by themselves, and this they did very often. The mother thought it was safe for them to go unaccompanied by anyone. After having taught the children the way to the aunt's home the mother apparently took no steps whatever to assure the safety of the children. It seems evident and I think it can be reasonably inferred from the evidence that she did not even observe the children on any of their many trips to the aunt's home, to see them across the canal in safety. On the day when the children were drowned the evidence does not even disclose when they were first missed, and there is nothing in the testimony to show what happened after the children left their home on the east side of the canal to go to the aunt's residence on the west side of the canal. The body of the little boy was recovered from the canal the same day. The body of the girl, Mary Julia, was not found until the following day.

A ditch rider testified the two children, Mary Julia Toribio and Crisencio Toribio, had been observed playing along the ditch two or three days before the tragedy. At that time the ditch rider warned them not to play in the vicinity

of the ditch. This warning to children of four and seven years of age is not too significant. The rider testified that at the beginning of the irrigation season the Governor of the Pueblo was notified that the water had or would be turned into the ditch. He was so notified for the purpose of informing the parents of the children. Whether the Governor ever gave such notice to the parents of the children is not disclosed by the evidence. There were no signs or warnings of any kind, on June 17, 1957, at the bridge or where the fence had been at sometime in the past.

The mother testified the two children had been drowned in the irrigation ditch, to which testimony no objection was made. This testimony coupled with the place where the bodies were recovered establishes the fact that they were drowned in the canal. How the children got into the water is not shown. There is no evidence whatever that they fell from the bridge or slipped, stumbled or fell at some place or point where the fence or fences apparently had been at some prior time. The exact place where they entered the ditch is not shown. Their bodies were found at some distance from the bridge but the exact distance is not disclosed. The mother testified she had never seen the places where the bodies of the children were recovered. Otherwise the evidence discloses the bodies may have been discovered some distance from the bridge, or may have been found in close proximity to the bridge. The evidence is wholly lacking in this regard. There is no evidence of hidden danger nor of pitfall. There was testimony that three children had been drowned in the irrigation ditch. Again, even here, we are confronted with uncertainty. It was not shown how or in what manner the three children were drowned, nor where, except they were drowned in the irrigation ditch. Apparently twins had been drowned at the same place. Details as to the drowning of the third child, or even of the three, are lacking.

Upon these facts as stated, which include practically all the evidence, and in consideration of the law and all presumptions, the Court is asked to return a judgment against the United States in the sum of $40,000.

Recovery by the plaintiff is sought on two theories. In the first count plaintiff charges the defendant with maintaining an attractive nuisance. In the second count the plaintiff alleges the defendant was negligent in not having guard rails along the bridge and in not keeping a fence in proper state of repair.

The Government asserts several defenses in its answer. It denies any negligence on the part of irrigation and reclamation officials or employees. Among other defenses the defendant contends that if any negligence is shown the plaintiff's own contributory negligence bars recovery by her. It also defends upon the ground that the facts bring the case within the exception contained in the Tort Claims Act, which exempts the Government from liability where discretion of officials or employees is involved. Other defenses pleaded will not be discussed.

Liability under the attractive nuisance doctrine does not appear to exist in cases such as the present proceeding. The New Mexico decisions, in the absence of additional facts, seem to reject the attractive nuisance theory. In fact the Government argues the law in New Mexico bars the plaintiff from recovery upon either theory alleged in plaintiff's complaint. The following New Mexico cases have been called to the Court's attention: Selby v. Tolbert, 56 N.M. 718, 249 P.2d 498; Barker v. City of Santa Fe, 47 N.M. 85, 136 P.2d 480; Mellas v. Lowdermilk, 58 N.M. 363, 271 P.2d 399.

█ Under the authorities relating to the attractive nuisance doctrine and the facts in this action adduced, plaintiff's prayer for relief under her first cause of action will be denied.

█ The issue of negligence remains to be decided. Upon it plaintiff

strenuously urges she is entitled to recover. From the facts hereinbefore stated, and about which there is no conflict, it will readily be observed convincing evidence, necessary to carry the burden of proof, is most deficient if not entirely lacking. Rarely has there been such a paucity of evidence in a negligence action.

Although plaintiff charges the defendant was negligent in not maintaining a fence along the banks of the canal, where a fence at sometime in the past had been erected, and in not having guard rails along the sides of the bridge, there is nothing whatever in the evidence which connects the death of the two children with the failure of the defendant to maintain such fence and provide guard rails on the bridge. Not one word of evidence shows where the children entered the ditch. We know nothing and there are no facts from which it can be inferred how or why they entered the ditch at some point in the ditch. If they slipped or fell from the bank where a fence might have safeguarded them we do not know. If they fell from the bridge where guard rails might have protected them is likewise unknown. Where, why and how the children entered, fell or were pushed into the water is all a matter of speculation and guess.

Plaintiff's counsel relies upon a rule of evidence to the effect that in a death case the decedent is presumed to have exercised ordinary care. Without questioning the rule it seems to be hardly enough to place liability upon the defendant. If the children were exercising ordinary care for their own safety it does not follow that defendant was negligent, and further that such negligence was the proximate cause of death. Cases of unavoidable accident where all parties exercised ordinary care are not unknown to the law.

The facts in Anderson v. United States, D.C., 138 F.Supp. 332, upon which plaintiff relies, differ greatly from those with which we deal.

From the evidence adduced, including the presumption of ordinary care, it must necessarily be held that plaintiff has not carried the burden of proving negligence, which was the proximate cause of the death of her two children, by that preponderance of evidence required in negligence cases.

■ Although it has been decided that defendant is not guilty of negligence, a further finding should be made. The defendant, among its other defenses, has pleaded the affirmative defense of contributory negligence on the part of the mother. As has been stated, the two children habitually crossed the irrigation ditch or canal. It will be remembered the mother testified that when the children first began visiting their aunt, which evidently had been sometime before the accident, she took the children to show them the way. Apparently she did not accompany them as a matter of protection. After she was convinced the children had learned the way to the aunt's, the mother permitted them to go alone, unattended and without observation.

In mentioning plaintiff's failure to watch the children, I am not unmindful of cases which hold a parent cannot watch children every minute of the day. Here the mother was not required to watch the children every minute of the day. If the ditch was as dangerous as plaintiff would now have the Court believe, because there was no fence and no guard rails, it would have taken but a very little of the mother's time to go with the children or to watch and see that they crossed safely. Had she done that the children would have crossed safely. The plaintiff cannot now escape responsibility by saying at this late date she thought it was safe for them to go alone. Had the plaintiff exercised what is believed to have been ordinary care under the circumstances we would at least know whether the absence of fence and guard rails was the proximate cause of the death of the children. We would not be left in darkness to speculate and guess as we are now left.

If the evidence discloses negligence on the part of the defendant because it

maintained the canal in a manner which constituted a dangerous instrumentality, without proper and required safeguards, such dangers should have been apparent to the mother acting in the exercise of reasonable and ordinary care. Plaintiff in this case appears to be a woman of ordinary intelligence and there is nothing to indicate the contrary. If danger and hazard existed she knew or should have known of the danger attending the children's going alone to the aunt's residence and in crossing the ditch. If she knew, or if she should have known, of such danger and hazard, she herself is guilty of contributory negligence in permitting the children to encounter such dangers and hazards without their being shielded and protected in some manner by the mother. The mother took no steps whatever to safeguard the children against danger, if such danger existed. The children were allowed to go regularly and on many occasions across the canal to visit their aunt. Parents cannot ignore responsibility and duty which is theirs.

Under the circumstances I must now find that if there was negligence on the part of the defendant then the plaintiff likewise was guilty of negligence which proximately contributed to the cause of the accident and the death of the two children. Therefore I find from the testimony the preponderance of the evidence shows that if defendant was negligent plaintiff was likewise guilty of contributory negligence, without which the accident would not have occurred, and plaintiff cannot recover.

Where a parent seeks recovery in his own right and for his own benefit, when a child has been killed, the law permits the defense of contributory negligence. Baker v. Dallas Hotel Co., 5 Cir., 73 F.2d 825; Porter v. United States, D.C., 128 F.Supp. 590. Affirmed in 4 Cir., 228 F.2d 389; Marino v. Kane, D.C., 131 F.Supp. 758. Affirmed in 2 Cir., 234 F.2d 317.

The Court does not adopt defendant's theory that the acts charged against the defendant in this case were such as would come within the exception to the Federal Tort Claims Act relating to discretion of officials or agents of the Government.

Practically all the facts disclosed by the evidence have been set forth in the views hereinbefore expressed. Therefore it will be unnecessary to make additional, separate findings of fact or conclusions of law. A simple form of judgment finding the issues in favor of the defendant and against the plaintiff, but without taxing costs to the plaintiff, may be prepared and submitted for signature.