STATE OF NEVADA, Appellant, v. WILMA WEBSTER, Individually and as Guardian Ad Litem for ROBERT D. WEBSTER, SUSAN L. WEBSTER, and LEVI J. WEBSTER, Infants, Respondents.

No. 6557

December 26, 1972                              504 P.2d 1316

*Robert List,* Attorney General, and *Richard G. Edwards* and *Margo Piscevich,* Deputy Attorneys General, of Carson City, for Appellant.

*Breen, Young, Whitehead & Hoy, Chartered,* of Reno, for Respondents.

**OPINION**

By the Court, BATJER, J.:

On the evening of December 14, 1967, seven dark-colored horses belonging to Dr. Richard Miller escaped from a pasture located near an unguarded entrance to U.S. Highway 395, wandered onto a frontage road and then onto the newly constructed controlled-access freeway. This controlled-access freeway began at the foot of Lakeview Hill north of Carson City, Nevada, and continued north to a point approximately four miles from said city.

A motorist driving toward Carson City hit one of those horses at a point about three and one-half miles north of that city. Another person came along shortly thereafter, but was able to avoid a collision with the animals by swerving sharply off the road. This second motorist drove on to Carson City and notified the highway patrol. A Nevada highway patrolman was dispatched to the scene, and soon after he arrived, at around 11 o'clock on that dark, moonless night, Billy Webster was approaching the horses. He was returning from Reno with

his wife, Wilma Webster, and three friends. When the Webster vehicle came within some 200 feet of the horses, the highway patrolman shone his red spotlight at the Webster car to warn of the danger. Webster was unable to stop and he hit one of the horses. His automobile was wrecked, and he died that same evening as a result of injuries received in the collision.

Respondent at trial charged that the State had failed to provide and maintain adequate fencing to prevent livestock from entering this highway and that this negligence was the proximate cause of Billy Webster's death.

The district court, sitting without a jury, found that the State was negligent in failing to install a cattle guard at the freeway entrance and that such negligence was the sole proximate cause of the accident. The court found no contributory negligence on the part of the deceased, Billy Webster, and entered judgment against the State.[1] From the evidence in the record, we cannot say that the findings are erroneous.

The State contends (1) that the Legislature has not so unalterably waived its sovereign immunity as to make it amenable to suit in this case; (2) that as a matter of law the trial court was required to find Billy Webster guilty of contributory negligence; and (3) that NRS 41.035 precludes any one individual from recovering more than a total of $25,000 even if recovery is based on separate claims.

The parties agree that NRS 41.035(1) is constitutionally sound and that it is within the legislative power to limit recovery to $25,000 per claimant. State v. Silva, 86 Nev. 911, 478 P.2d 591 (1970). That being the case, only two matters require our consideration on this appeal. The first is the State's contention that its alleged negligence in failing to install a cattle guard that would have prevented the errant horses from entering the controlled-access freeway was not actionable under NRS 41.032(2), which reads in pertinent part: "No action may be brought under NRS 41.031 or against the employee which is . . . [b]ased upon the exercise or performance or

---

[1] Judgment against the State was entered as follows:

First Cause of Action

| | |
| --- | --- |
| Wilma E. Webster | $35,000.00 |
| Robert D. Webster | 66,667.00 |
| Susan L. Webster | 71,667.00 |
| Levi J. Webster | 76,667.00 |

Second Cause of Action

| | |
| --- | --- |
| Wilma E. Webster | $17,725.84 |

the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any employee of any of these, whether or not the discretion involved is abused."

The other matter we must consider is the State's contention that respondent Wilma Webster is entitled to recover, if at all, only $25,000 for all damages she may have suffered as a result of the accident.

1. The State claims total immunity from suit, on the ground that the failure to install a cattle guard at the point where U.S. Highway 395 joined the controlled-access freeway was an act of discretion for which the State was exempted from liability. The citizens of the State of Nevada, acting through the Legislature, have conditionally waived sovereign immunity. NRS 41.031.[2] Such immunity, however, was not waived if the act complained of was a discretionary function of government. See NRS 41.032(2). Here, the governmental function to be considered was the construction of a controlled-access freeway. It was not mandatory upon the State to construct the freeway. It could have continued to maintain the two-lane highway between Reno and Carson City. Whether or not, for the convenience of the traveling public, the State would construct a controlled-access freeway between the two cities or construct a portion of the route was an exercise of discretion based upon policy. Its decision to do so was a discretionary act. Once the decision was made to construct a controlled-access freeway in the area where this accident happened, the State was obligated to use due care to make certain that the freeway met the standard of reasonable safety for the traveling

[2]NRS 41.031: "The State of Nevada hereby waives its immunity from liability and action and hereby consents to have its liability determined in accordance with the same rules of law as are applied to civil actions against individuals and corporations, except as otherwise provided in NRS 41.032 to 41.038, inclusive, provided the claimant complies with the limitations of NRS 41.032 to 41.036, inclusive, or the limitations of NRS 41.010. The State of Nevada further waives the immunity from liability and action of all political subdivisions of the state, and their liability shall be determined in the same manner, except as otherwise provided in NRS 41.032 to 41.038, inclusive, provided the claimant complies with the limitations of NRS 41.032 to 41.036, inclusive. An action may be brought under this section against the State of Nevada, any agency of the state, or any political subdivision of the state. In an action against the state or any agency of the state, the State of Nevada shall be named as defendant, and the summons shall be served upon the secretary of state."

public. This is the type of operational function of government not exempt from liability if due care has not been exercised and an injury results. State v. Silva, supra; Harrigan v. City of Reno, 86 Nev. 678, 475 P.2d 94 (1970).

In Pardini v. City of Reno, 50 Nev. 392, 401, 263 P. 768, 771 (1928), this court said: "[W]here a railing or barrier is reasonably necessary for the security of travelers on the street, which from its nature would otherwise be unsafe, and the erection of which would have prevented the injury, it is actionable negligence not to construct and maintain such railing or barrier." The possibility of liability by the city in that case was not predicated on its failure to construct a guardrail in accordance with a plan, but on its failure to construct one at all. The failure of the city to construct a guardrail in both Harrigan v. City of Reno, supra, and Pardini v. City of Reno, supra, as the failure of the State in this case to install a cattle guard at the entrance to the controlled-access freeway, came at the operational level, after the discretionary decision had been made. Where a cattle guard is reasonably necessary for the security of the traveling public on a controlled-access freeway, the failure to install it renders the State amenable to suit.

The discretionary exception provision found in NRS 41.032 is identical to that of the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1965). The purpose of that act was stated in Indian Towing Co. v. United States, 350 U.S. 61, 68–69 (1955), to be "to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws." In United States v. Yellow Cab Co., 340 U.S. 543, 550 (1951), the High Court stated that, in view of the clearly defined purpose of the act as a whole, "it is inconsistent to whittle it down by refinements."

The State's position in connection with its contention is that discretion on the part of the State, acting through its employees, is involved in the installation of a fence or cattle guard. To accept the State's position would effectively restore sovereign immunity. In Swanson v. United States, 229 F.Supp. 217, 219 (N.D.Cal. 1964), that court said: "In a strict sense, every action of a government employee, except perhaps a conditioned reflex action, involves the use of some degree of discretion."

The State relies strongly on Dalehite v. United States, 346

U.S. 15 (1953). It is not apposite. Although, in that case, the Court sustained governmental immunity, it did so because it was found that the decisions held culpable were made at a planning, rather than operational level. Later federal court decisions have adopted the view that acts done in accordance with operational level decisions are not protected by the exception for discretionary functions. United States v. Hunsucker, 314 F.2d 98 (9th Cir. 1962); American Exch. Bank v. United States, 257 F.2d 938 (7th Cir. 1958); Indian Towing Co. v. United States, supra.

2. The State contends that, although Wilma Webster pleaded and proved both an action for her own personal injuries and an action for Billy Webster's wrongful death, her recovery should be limited to a total of $25,000. We do not agree. NRS 41.035 declares: "No award for damages *in an action* sounding in tort . . . may exceed the sum of $25,000 to or for the benefit of any claimant. . . ." By its terms, NRS 41.035 limits any claimant's recovery to $25,000 in an action. It does not limit a claimant's recovery to $25,000, regardless of how many actions he or she may have.

Although joined in one complaint, an action for wrongful death and an action for personal injuries suffered by the plaintiff in the same accident are separate, distinct and independent. Wells Inc. v. Shoemake, 64 Nev. 57, 177 P.2d 451 (1947). They rest on different facts, and may be separately maintained. Burns v. Brickle, 126 S.E.2d 633 (Ct.App.Ga. 1962); Chamberlain v. Mo.-Ark. Coach Lines, 189 S.W.2d 538 (Mo. 1945). In City of Reno v. Fields, 69 Nev. 300, 250 P.2d 140 (1952), this court quoted with approval from Friederichsen v. Renard, 247 U.S. 207, 38 S.Ct. 450, 451, 62 L.Ed. 1075, where the High Court said: "The cause of action is the wrong done, not the measure of compensation for it, or the character of the relief sought. . . ." Therefore, the identity of each of Wilma Webster's actions was not lost because she proceeded pursuant to NRCP 18(a),[3] and commenced both actions simultaneously, by joining them in one complaint.

This court has heretofore said that limitations on the State's

---

[3]NRCP 18(a): "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable or both as he has against an opposing party."

waiver of sovereign immunity should be strictly construed, and that "[I]n a close case we must favor a waiver of immunity." State v. Silva, 86 Nev. 911, 914, 478 P.2d 593 (1970). To hold that Wilma Webster's two valid actions should be treated as one, merely because both were joined in one pleading, or because one act of the State is an element of proof in both, would be neither a strict nor a literal construction of NRS 41.035.

Adhering to the established meaning that the term "action" is the wrong done and not the measure of compensation or the character of the relief sought, we cannot construe such term in NRS 41.035 to be synonymous either with "actions" nor with "accident." Although this Court recognized in State v. McNamara, 3 Nev. 70 (1867), that a statute's words might be inadvertent, it applied their literal meaning saying: "So on the other side, it may reasonably be urged that the lawmakers intended precisely what their words import, (this is a primary rule of construction). The legislature must be intended to mean what they have expressed in plain terms. . . ." Id. at 74.

3. The State's remaining assignments of error have been considered and are found to be neither central to the main issue in the case nor directly bearing upon its disposition. NRCP 61.

The judgment of the district court is affirmed in part and reversed in part, and the case is remanded to the district court with instructions to enter a modified judgment allowing Wilma E. Webster, Robert D. Webster, Susan L. Webster and Levi J. Webster awards of $25,000 each on the first cause of action, and Wilma E. Webster an award of $17,725.84 on the second cause of action.

ZENOFF, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.