ALFRED HANSEN AND ANOTHER v.
CITY OF ST. PAUL.

214 N. W. 2d 346.

January 18, 1974—No. 43671.

*Robins, Davis & Lyons, Stanley E. Karon,* and *Larry R. Fredrickson,* for appellants.

*Kenneth J. Fitzpatrick,* City Attorney, and *Thomas J. Stearns* and *Terry F. Sullivan,* Assistant City Attorneys, for respondent.

Heard before Knutson, C. J., and Kelly, Todd, and Olson, JJ. Considered and decided on the record by the court en banc.

O. RUSSELL OLSON, JUSTICE.[*]

Plaintiffs appeal from an order for summary judgment[1] in favor of defendant city. The trial court concluded the city was immune from liability for the negligence alleged in plaintiffs' complaint because of the discretionary function exception of Minn. St. 466.03, subd. 6. We reverse.

On a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party—in this case, plaintiffs. Dempsey v. Jaroscak, 290 Minn. 405, 188 N. W. 2d 779 (1971); Sauter v. Sauter, 244 Minn. 482, 70 N. W. 2d 351 (1955).

Briefly, such view of the facts indicates the following: Two dogs attacked and bit plaintiff Ellen Hansen on a public sidewalk at 136 North Lexington Avenue in St. Paul on May 18, 1971, at 12:45 p. m. The attack resulted in extensive injuries and 2 months' hospitalization for Mrs. Hansen, a 59-year-old woman; seven reports of dog-biting, concerning the same dogs, had been

---

[*]Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

[1]We have consented to consider the appeal pursuant to Rule 102, Rules of Civil Appellate Procedure.

made to the city officials during the prior 13-month period; the city officials knew the two dogs were vicious and prone to make unprovoked attacks upon public sidewalk pedestrians; the appropriate city health officer had notified the owner of the dogs that the dogs qualified as vicious under the city ordinance and the city knew the owner of the dogs ignored its requests that the dogs should be controlled or destroyed, pursuant to city ordinance requirements; the most recent of the other attacks had occurred 2 hours earlier against another sidewalk pedestrian who was also severely bitten; she had immediately reported the attack to the appropriate city officials; in response to that report, two city officers made a field investigation in the forenoon and discovered that the dogs were still running at large. It was while the officials interrupted this field investigation for their lunch break that the dogs attacked the plaintiff.

The issues before the court are twofold: (1) Whether the municipality has committed a tort in permitting dogs known to be dangerous, vicious, and impoundable to prowl uncontrolled upon the public sidewalks in a residential area, and (2) if so, whether the city is immune from liability for such tort because of the discretionary-act exception embodied in Minn. St. 466.03, subd. 6.

### I. *Tort Liability*

On the first issue of whether the inaction by the city constitutes tortious conduct on its part under these circumstances, this state has no precedent in point.

Generally, Minnesota holds a municipality responsible for negligence in maintaining the safety of its street and sidewalk surfaces. While a municipality is not an insurer, it is obligated to discharge the duty to maintain safe streets and sidewalks, and it cannot delegate that duty to adjacent property owners. Loewe v. City of Le Sueur, 277 Minn. 94, 151 N. W. 2d 777 (1967). In some instances the adjacent property owner also may be liable for his contribution to the sidewalk condition. Loewe v. City of Le Sueur, *supra*. The liability of the city is, however, limited to those cases where it has notice, actual or constructive, of the de-

fective condition. Cleveland v. City of St. Paul, 18 Minn. 255 (279) (1872). See, also, Peterson, *Governmental Responsibility for Torts in Minnesota,* 26 Minn. L. Rev. 480.

Consistently, this court heretofore has limited municipal liability for unsafe streets and sidewalks to physical defects on the surface and obstructions on or above it; moving hazards have not been covered in the municipality's obligation to maintain reasonably safe streets and sidewalks. In Luke v. City of Anoka, 277 Minn. 1, 151 N. W. 2d 429 (1967), this court recognized the validity of the well-established, safe-street (and safe-sidewalk) common-law rule and noted that the rule had evolved as an exception to the general doctrine of governmental immunity prevailing prior to the passage in 1963 of Minn. St. c. 466. We refused in Luke to extend the municipality's liability for unsafe sidewalks and streets to include liability for failure to protect sidewalk and street pedestrians from a moving hazard—in that case, a runaway vehicle along a parade route. On the other hand, some New York cases allow recovery against a municipality under circumstances where the municipality has adequate notice of an inherently dangerous condition; when the duty is established and knowledge and foreseeability are shown of the inherently dangerous condition or situation, liability has been permitted. Smullen v. City of New York, 28 N. Y. 2d 66, 320 N. Y. S. 2d 19, 268 N. E. 2d 763 (1971). In Smullen, the court noted that municipal liability would not be found for failure to perform a general protective governmental function such as an inspector's failure to ascertain a safety code violation.[2] However, in Smullen

[2] Hoffert v. Owatonna Inn Towne Motel, Inc. 293 Minn. 220, 199 N. W. 2d 158 (1972), is in accord. Hoffert involved a claim against the city that it had negligently issued a building permit for remodeling of a motel, the construction of which had not complied with the city building code and had therefore caused personal injuries and death to persons trapped in improperly constructed stairwells after a fire broke out. This court held the city not liable for the breach of duty. In that case, clearly there was no proof that the city officials knew of the existence of an inherently dangerous condition.

the inspector negligently adjudged a trench to be safe and visually observed the decedent, knowing of and relying on the inspector's approval, enter the trench; the trench was determined in the trial court to be an inherently dangerous condition.

Under the recited facts of the instant case, it is difficult reasonably to come to any other conclusion than that the two roaming dogs constituted a dangerous condition for public sidewalk pedestrians in the immediate area of 136 North Lexington Avenue. The city had notice and knowledge of that inherently dangerous condition. The failure of the city officials to respond in fact may be a reckless disregard of the safety of the public sidewalk pedestrians.

While the St. Paul city ordinances recited in the footnote herein [3] create a duty upon the city to apprehend dogs running

---

[3] In the instant case, the municipality's duty to the general public with respect to dogs running at large in the city and with respect to vicious dogs (defined as one who has bitten one or more persons) is delineated in the city ordinances. St. Paul Legislative Code, c. 329, covers the subject matter. Section 329.08, in short, prohibits dogs running at large; § 329.09 imposes a duty upon selected city employees (including peace officers) to capture and impound dogs running at large (as well as unlicensed dogs); § 329.15 makes further provision for employment of a pound master by St. Paul's commissioner of public safety (interestingly, the wage provided is $2.50 per day without a horse and wagon and $3.50 per day with a horse and wagon), whose duties shall be to capture, care for, and ultimately dispose of dogs running at large; lastly, § 329.16 authorizes the health officer to order destruction of any dangerous or vicious dog after a 3-day notice to the owner. The ordinance in fact places no additional duty on the city employee with respect to vicious dogs except as exists for dogs running at large, but, as indicated, it does grant the power, if not the duty, to destroy the vicious dog.

This decision does not rest on duty created by statute or ordinance but rather upon the common-law duty of a municipality to maintain its streets and sidewalks. Therefore, we do not enter the thicket of whether the ordinance requiring impoundment of dogs running at large and dogs unlicensed is enacted for the public in general or enacted to protect the class in which the injured plaintiff falls.

at large and also empowers the city to destroy vicious dogs, we turn rather to a limited extension of the municipality's common-law duty to maintain streets and sidewalks as a basis for municipal liability for the moving hazard upon the public sidewalk created by prowling vicious dogs.

Under circumstances where (1) vicious dogs prowl the public sidewalks endangering the safety of pedestrians sufficiently to constitute an inherently dangerous condition, and (2) the appropriate and responsible municipal officials charged with dog impoundment duties in the municipality (or, in the absence thereof, the duty of maintaining the safety of the public sidewalks and streets) clearly have knowledge of such described inherently dangerous condition, and (3) those officials have further knowledge that the dog's owner or master fails in his duty to control or confine the vicious, dangerous dog, as the municipality by ordinance requires, and the dog's master or owner consistently ignores directives from said officials to confine and control the dog, and (4) confinement and impoundment of the dog are reasonably capable of achievement, then the municipality is responsible in tort for permitting dogs known to be dangerous, vicious, and impoundable to prowl uncontrolled upon the public sidewalks. We so hold.

In so holding we are mindful that it may be claimed or believed this decision opens a Pandora's box with respect to municipal liability for other moving hazards upon the public streets and sidewalks, such as attacks upon pedestrians by public drunks or by persons committing violent or criminal acts. This decision specifically relates to tort liability for failure to maintain a safe sidewalk in the face of an inherently dangerous condition to human beings created by nonhuman animals, not by other human beings. It would be a misconstruction of this decision to interpret it as a basis for restraint upon persons using the public streets or sidewalks under the belief or misbelief that tort liability may be imposed upon the city for allowing other human beings to use or misuse their rights upon the public streets and sidewalks. For

example, in Lamont v. Stavanaugh, 129 Minn. 321, 152 N. W. 720 (1915), the municipality's duty to provide safe streets and sidewalks did not extend to the moving hazard of a policeman with a known violent temper who assaulted the plaintiff with a billy club.

## II. *"Discretionary Acts" Exception To Municipal Tort Liability*

With specified limitations and exceptions, Minn. St. c. 466 abolishes governmental (sovereign) immunity of municipalities as to tort claims. Section 466.02 reads as follows:

"Subject to the limitations of Laws 1963, Chapter 798 [Minn. St. 466.01 to 466.15], every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function."

The exceptions or limitations are set forth in § 466.03, which provides in part:

"Subdivision 1. Section 466.02 does not apply to any claim enumerated in this section. * * *

\* \* \* \* \*

"Subd. 6. Any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

"Subd. 7. Any claim against a municipality as to which the municipality is immune from liability by the provisions of any other statute."

The cited exception, Minn. St. 466.03, subd. 6, is patterned after § 2680(a), the discretionary function exception, of the Federal Torts Claim Act, 62 Stat. 982, 28 USCA, § 2680(a). The leading United States Supreme Court decision first interpreting that exception is Dalehite v. United States, 346 U. S. 15, 73 S. Ct. 956, 97 L. ed. 1427 (1953). Numerous Federal and other state court decisions have followed from Dalehite. In general, the judicial interpretations of the "discretionary acts" exception find greater

applicability (and therefore immunity) for decisions made on the executive (planning) level of conduct than on the operational level. See, Dahlstrom v. United States, 228 F. 2d 819 (8 Cir. 1956). Minnesota has followed this interpretation. Silver v. City of Minneapolis, 284 Minn. 266, 170 N. W. 2d 206 (1969). In Silver, this court held that the deployment of police and fire-fighting resources in the face of threatened and actual riotous circumstances constituted the exercise of such a discretionary function and accordingly the city was immune from tort liability pursuant to the exception set forth in § 466.03, subd. 6. It appears reasonably clear that the facts in Silver v. City of Minneapolis, *supra,* represented an executive (planning) policy decision under circumstances clearly calling for the exercise of a discretionary function, i. e., how to deploy personnel. In the instant case, the failure of the city to act in the face of a known dangerous condition occurred in an entirely different circumstance, namely, at the operational level rather than the executive or administrative level.

We hold that the failure of the St. Paul city officials to control vicious dogs under circumstances wherein the city had knowledge that the identified and impoundable vicious dogs prowled uncontrolled on public sidewalks does not constitute a failure to exercise a discretionary function within the meaning of Minn. St. 466.03, subd. 6, and therefore the city of St. Paul is not immune from liability.

Reversed and remanded.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.