Bruce T. **BUTLER, Individually, and Bruce T. Butler, as Next Friend and Natural Parent of Susan Butler, a Minor; Steven S. Butler; Randall Butler; and William Butler, Appellants,**

v.

**STATE of Iowa, Appellee.**

No. 68041.

Supreme Court of Iowa.

July 20, 1983.

Lawrence L. Lynch and Mary K. Hoefer of Sladek & Lynch, Iowa City, for appellants.

Thomas J. Miller, Atty. Gen., and Craig Gregersen, Asst. Atty. Gen., for appellee.

Lee Gaudineer, Jr., of Gaudineer & Austin, Des Moines, for amicus curiae, Iowa State Ass'n of Counties.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, LARSON and WOLLE, JJ.

McGIVERIN, Justice.

The genesis of this appeal is a motor vehicle accident which occurred in the early morning hours of April 11, 1974. At that time eight members of the Butler family were traveling west on Interstate 80 in a mobile home owned by plaintiff Bruce T. Butler. The one-way westbound road had two lanes for traffic plus paved shoulders. It was a wet and windy night and plaintiff

Randall Butler, Bruce's son, was driving at about 50–55 mph.

Just west of Iowa City near the Tiffin exit, Randall moved into the inside, left-hand lane in order to pass a semi. As the motor home overtook the semi, a gust of wind pushed it onto the left shoulder of the road. Randall maintained his speed at 50–55 mph while trying to return the vehicle to the roadway. Before he was able to do so, the motor home struck a guardrail placed just off the shoulder of the interstate. The guardrail "speared" the motor home severely damaging it and injuring its occupants with varying degrees of severity. The most severely injured include plaintiffs Susan Butler, Bruce's daughter, and Steven S. and William Butler, Bruce's brothers.

Interstate 80 is part of our nation's interstate road network. The section where the accident occurred was built in 1965 with the substantial aid of federal funds. The design of the interstate, including the placement of guardrails, was approved by the Federal Highway Administration. A grassy median separated the roadway for westbound traffic from the one for eastbound traffic. The guardrail struck by plaintiffs was designed to protect motorists from a bridge pier in the center of the median. When the guardrail was installed in 1965, it was in conformance with the plans approved by the Federal Highway Administration, and it met the then existing standards of the traffic engineering profession.

The guardrail struck by plaintiffs consisted of a piece of W-beam steel directly attached to six-inch diameter round posts. The entire structure was 75 feet long. The "end treatment" consisted of a piece of guardrail flared toward the median, away from the westbound traffic, a distance of 18 inches on an 85-foot radius curve.

The state of the art concerning the design and placement of guardrails changed rapidly between 1965 when the guardrail in question was installed and 1974 when the accident occurred. In that time the State made five major changes in the guardrail standards for new construction.

After their claim was denied by the state appeal board, Iowa Code § 25A.5, plaintiffs, Michigan residents, brought a negligence action against the State under the Tort Claims Act. Iowa Code ch. 25A. The State filed a special appearance challenging the district court's subject matter jurisdiction under the "discretionary function" exception, section 25A.14(1), of the Tort Claims Act. Section 25A.14(1) provides in part as follows:

> The provisions of this chapter shall not apply with respect to any claim against the state, to:
> 1. Any claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a *discretionary function or duty* on the part of a state agency or an employee of the state, whether or not the discretion be abused.

(Emphasis supplied.) The special appearance was overruled. The State then moved to strike several counts of the petition and again raised the discretionary function exception. This motion was overruled; the State answered and urged the discretionary function exception as an affirmative defense.

This law case was tried to the court on two specifications of negligence alleged by plaintiffs: (1) The State was negligent in the design and placement of the guardrail struck by plaintiffs; and (2) the State negligently failed to update the guardrail. The trial court as fact finder found that the guardrail complied with accepted engineering standards when it was installed; thus there was no negligence on the part of the State in its design and installation. The court also found that the State's failure to modify the design and update the guardrail was not a breach of the duty of due care owed by the State to plaintiffs. Alternatively, the district court ruled that any decisions made by the State concerning the design and modification of the guardrails was covered by the "discretionary function" exception of section 25A.14(1) to any tort

liability by the State otherwise available to plaintiffs under chapter 25A.

Plaintiffs appealed. We transferred the case to the court of appeals, which reversed the trial court, holding that the case did not fall within the discretionary function exception and that the State was negligent as a matter of law in failing to update the outmoded guardrail. That court also remanded the case to the trial court for a decision on the issues of proximate cause and damages, if appropriate.

We granted the State's petition for further review. The issues presented are twofold: (1) Whether the initial design decision and the subsequent decisions by the State not to upgrade the guardrail are within the discretionary function exception of section 25A.14(1); and (2) whether substantial evidence supports the trial court's finding that the State was not negligent.

I. *Discretionary function exception.* Iowa Code section 25A.4 provides in part, "[t]he immunity of the state from suit and liability is waived to the extent provided in this chapter." Section 25A.14, however, lists several exceptions to this waiver of immunity.

■ Therefore, the initial determination to be made in actions brought under the Tort Claims Act is whether the State's actions fall under the exceptions of section 25A.14. If the State is covered by one of the statutory exceptions, the trial court must dismiss the action. *Lloyd v. State,* 251 N.W.2d 551, 556 (Iowa 1977). The result is the State is immune from tort liability for a claim listed in section 25A.14.

In the present case the State seeks shelter in the discretionary function exception. Iowa Code § 25A.14(1). We have adopted the planning-operational dichotomy set forth in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), to determine whether a decision challenged under chapter 25A was discretionary. *Stanley v. State,* 197 N.W.2d 599, 603 (Iowa 1972). The difficulty lies in determining when the planning level decisions stop and decisions on the operational level begin.

Section 25A.14(1) is identical to the discretionary function exception of the Federal Tort Claims Act, 28 U.S.C. § 2860(a) (1976), and we are aided by federal interpretations of that provision. *Lloyd,* 251 N.W.2d at 556.

The planning level is generally characterized as the policy making stage and is said to encompass decisions "that involve the formulation of policy, that call for a weighing of competing interests, that require an assessment of the practicability or feasibility (including the consideration of budgetary constraints) of a proposed course of action, or that entail an evaluation of how the public interests will best be served." *Estate of Callas v. United States,* 682 F.2d 613, 620 (7th Cir.1982) (citations omitted). Thus the initial decision to undertake a project falls within the immunity of the planning stage. *Lewis v. State,* 256 N.W.2d 181, 195 (Iowa 1977) (quoting *State v. Webster,* 88 Nev. 690, 693, 504 P.2d 1316, 1319 (1972)) (*"Whether or not,* for the convenience of the traveling public, *the State would construct a controlled-access freeway * * * was an exercise of discretion* based on policy.").

The implementation of decisions made at the planning level is operational; decisions made at the operational level are not covered by the discretionary function exception. *Lewis,* 256 N.W.2d at 195. For example, in the area of highway construction and repair "[o]nce the decision [has been] made to construct [or repair] a ... freeway ..., the State [is] obligated to use due care to make certain that the freeway [meets] the standard of reasonable safety for the traveling public." *Id.* (quoting *Webster,* 88 Nev. at 693, 504 P.2d at 1319) (decision not to erect a median guardrail at place of accident on Interstate 29 made at operational level); *cf., Stanley,* 197 N.W.2d at 604 (decision to allow highway to remain open while under repair made at operational level).

The distinction between the two levels is best illustrated in terms of judicial review. Policy decisions, such as when and where to construct a freeway, involve the weighing of the merits of social, political and econom-

ic factors traditionally held to be within the purview of the legislature. Judicial review of such decisions would be an apparent violation of the separation of powers principle. *Blessing v. United States,* 447 F.Supp. 1160, 1180 (E.D.Pa.1978) (federal discretionary function exception statutorily embodies separation of powers principle). Decisions made at the operational level, however, do not involve the same overriding policy determinations and can readily be reviewed under judicially manageable tort standards of due care and reasonableness. *Id.* at 1185.

■ In the present case we must evaluate the Department of Transportation (DOT) decisions on which plaintiffs base their negligence claims. The first are decisions made concerning the design and placement of the guardrail. The second are decisions made over the course of the years not to update the guardrail. We conclude that these decisions were made at the operational level. Such decisions were necessary to implement the policy decisions to construct I–80 and are to be judged according to the State's duty to use due care to make the freeway reasonably safe for the traveling public. *Lewis,* 256 N.W.2d at 195; *cf. Driscoll v. United States,* 525 F.2d 136 (9th Cir.1975) (having undertaken to provide traffic control devices on air base, decision not to install certain devices in area of accident was operational); *Foster v. United States,* 183 F.Supp. 524 (D.N.M.1959), *aff'd,* 280 F.2d 431 (1960) (failure to place guardrails on bridge over canal and failure to repair fencing along canal not within discretionary function exception); *Baldwin v. State,* 6 Cal.3d 424, 99 Cal.Rptr. 145, 491 P.2d 1121 (1972) (discretionary function exception not applicable to failure to upgrade intersection known to be hazardous); *see contra, Department of Transportation v. Nielson,* 419 So.2d 1071 (Fla.1982) (failure to control intersection with lights and failure to properly upgrade busy intersection were decisions made at planning level); *Stanford v. State Department of Highways and Public Transport,* 635 S.W.2d 581 (Tex. App.1982) (decision not to put guardrails on overpass was made at planning stage).

We conclude the trial court's alternative ruling that these decisions are covered by the discretionary function exception is incorrect. We agree with the portion of the court of appeal's decision that the courts have jurisdiction to decide this action.

■ II. *Factors in the negligence determination.* The determination that the State is not protected by the discretionary function exception, which gives tort immunity to the State, has no bearing on the State's liability. Whether the State was negligent is a question of fact to be determined under tort principles.

The court of appeals concluded that the State was negligent as a matter of law for failing to upgrade the guardrail. We do not agree. It is a well-established principle of tort law that questions of negligence are generally for the fact finder and only in exceptional cases may they be decided as a matter of law. Iowa R.App.P. 14(f)(10). We do not believe that negligence here could be decided as a matter of law.

■ The State has a statutory duty to maintain, Iowa Code § 313.36, and improve, Iowa Code § 313.8, the State's primary road system, Iowa Code § 306.3(2), (3). These statutory duties and the common law duty to make highways reasonably safe for the traveling public, *Lewis,* 256 N.W. at 195, must be judicially reviewed on the basis of the tort requirement to act as a reasonable and prudent department of transportation would act in the circumstances. The reasonableness of the State's decisions at the operational level requires the fact finder to balance such factors as (1) the danger imposed by the outmoded device; (2) the increase in safety a new device or design would provide; (3) the cost of upgrading; (4) the State's available resources; (5) other known hazards which pose a greater danger to motorists; and (6) any other relevant factors, including other needs in the highway system. *See Baldwin,* 6 Cal.3d at 436–37, 99 Cal.Rptr. at 153, 491 P.2d at 1129; *Hall v. State,* 109 Mich.App. 592, 311 N.W.2d 813, 820 (1981).

At any one time, the DOT may be aware of many facets of the State's highway network which have become outdated due to recent design changes or advancements. At the same time, however, the DOT will have a limited budget with many competing demands placed on it. The DOT acts as a reasonable agency when it attempts to prioritize the needs of the entire highway system and make maximum use of its limited resources to best serve all of the traveling public. Whether the DOT succeeds in meeting this standard is a question for the fact finder.

III. *Sufficiency of the evidence.* The trial court focused on both of plaintiffs' specifications of negligence. In regard to the allegation of negligent design and placement, the court found that the design used when the guardrail was constructed had been approved by the Federal Highway Administration and was in conformity with the then existing standards of the traffic engineering profession. The trial court found no negligence in the original design and placement of the guardrail.

These findings are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We believe that substantial evidence supports these findings. The design conformed to the existing state of the art and met the standard of providing reasonable safety for the traveling public when constructed.

The trial court also found no negligence on the part of the State for its failure to upgrade the guardrail. The court did not completely articulate its reasoning in arriving at that finding. However, the evidence shows the State applied its available resources to construction, maintenance and upgrading other needs of the state highway system. We believe the court found the facts necessary to support its decision in the State's favor. *See State v. Boelman,* 330 N.W.2d 794, 795 (Iowa 1983).

The trial court found that guardrail standards had changed dramatically and rapidly since the installation in 1965 of the guardrail struck by plaintiffs. However, the court also noted that "[t]he only evidence of a collision between a motor vehicle and the guardrail in question is of the accident involved in this case." *Compare Baldwin,* 6 Cal.3d at 428, 99 Cal.Rptr. at 147, 491 P.2d at 1123 (intersection state failed to upgrade accounted for 14% of all traffic fatalities in the city and report of city engineer prior to accident estimated that 67% of the collisions at the intersection might have been avoided by proper traffic signals).

The trial court also noted that it would be impossible to keep up with the ever-changing state of the art in guardrail design and that the cost of such changes would be great; it was estimated that it would cost $25,725 to change an existing guardrail to conform to each major design revision. There were 200 median guardrail installations along I–80 of the type involved in this case. The court found that the State had decided that the greatest increase in safety to travelers on Iowa's highways could be achieved by completion of the interstate highways which would lessen traffic on primary, two-lane highways.

We conclude that substantial evidence supports the findings of the trial court. From the record it is clear that the court considered all relevant factors necessary to determine whether the DOT acted as a reasonable agency under the circumstances. We vacate the court of appeals decision and affirm the trial court's judgment that the State was not negligent in the design and placement of the guardrail and in the decision not to upgrade.

IV. *Statutory change.* Finally, we note that the legislature recently amended the Tort Claims Act, effective on July 1, 1983, in order to deal with the problems presented in highway design cases. 1983 Iowa Acts S.F. 531, § 11 (to be codified at Iowa Code § 25A.14(8)). This amendment creates a new statutory exception under section 25A.14, which gives the State immunity from certain claims. This case is not affected by that legislative change and we have no occasion to pass on any aspect of the new statute.

Having considered all of the contentions raised by the parties, we vacate the decision of the court of appeals and affirm the judgment of the district court in favor of the defendant State of Iowa.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.