Richard JOHNSON, Appellant,

v.

COUNTY OF NICOLLET, Respondent.

No. C1–86–70.

Court of Appeals of Minnesota.

May 20, 1986.

David J. Goldman, Minneapolis, for appellant.

Robert Birnbaum, Howard S. Marker & Assoc., Minneapolis, for respondent.

Heard, considered and decided by LANSING, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

LANSING, Judge.

Richard Johnson brought this action against Nicollet County, alleging he was injured in an automobile accident because the county negligently failed to place guardrail along the road. The trial court granted summary judgment to the county on the basis that the Municipal Tort Claims Act, Minn.Stat. § 466.03, subd. 6 (1980), provides discretionary act immunity. Johnson appeals, and we reverse.

## FACTS

On October 25, 1981, Richard Johnson and his wife, Susan Clark, were seriously injured in an automobile accident on County Road 71 in North Mankato. County Road 71 runs east along the bank of the Minnesota River.[1] It is bordered on the north side by a steep cliff and on the south side by an embankment down to the river.

The night of the accident the road was slippery because of snow. Johnson testified in a deposition that he moved to the right when he observed an oncoming car. His right front wheel left the pavement, and his car plunged down the embankment and struck a tree. Johnson brought suit, alleging the county negligently failed to place guardrail between the road and the river bank.

Robert Koppen was the Nicollet County Engineer from 1959 to 1982. He was in charge of all decisions regarding road maintenance and design. Koppen testified in a deposition that expense was not a factor in deciding whether to place guardrail at the accident site. He said there were two reasons: first, the road is narrow and he thought placing a guardrail might narrow the road further; second, "we felt that the Lord already gave us something to rely on a little bit by putting the trees there" to stop cars from going into the river. Koppen said, "as far as I am concerned personally the whole road is a hazardous location."

Koppen acknowledged having seen a letter from Raymond Sponberg dated December 10, 1980, in which Sponberg requested that guardrail be placed on County Road 71. Sponberg's letter says he was concerned because he witnessed an accident in which an automobile went over the embankment and struck a tree. Sponberg's letter was read to the county board on December 22, 1980. In response, guardrail was placed along one section of the road, but not where Johnson's accident occurred.

In interrogatories dated September 1984 Johnson's attorney requested the accident history of County Road 71. The county did not respond to this question, claiming it had no information available.

In July 1985 the county moved for summary judgment. In support of its motion the county submitted the affidavit of Michael Wagner, the present county engineer, stating:

> [W]hen the County of Nicollet makes decisions about highway design and maintenance, including the installation of guardrail, it considers many competing factors, including, hazards which might be created by the installation of the

---

1. County Road 71 is not part of the County State-Aid Highway System, *see* Minn.Stat. § 162.02 *et seq.*

guardrail, the hazard which the guardrail is designed to protect against, environmental factors, including those which would create difficulties in the installation and maintenance of guardrail, the speed limit of the roadway involved, traffic volumes, accident history, and the availability of funds.

In opposition to the motion Johnson submitted the affidavit of an engineer stating that the county was negligent in failing to place guardrail at the accident site. The engineer also said in correspondence with Johnson's attorney that the county should not have relied on trees to keep cars from falling into the river because the trees pose an additional roadside hazard.

The trial court ruled in the county's favor. Its order provides:

> In the instant case there is no evidence of a specific duty requiring Nicollet County to place a guardrail at the site of the accident on County Road 71. Furthermore, Nicollet County does not have the resources to place a guardrail on every road for which there is a request. It must balance the competing factors relating to the cost and benefit of a guardrail at a certain location. Defendant's choice of where to place guardrails falls within the discretionary immunity provision of Minn.Stat. § 466.03, subd. 6. Therefore, Defendant's immunity from liability to Plaintiff entitles it to summary judgment as a matter of law.

> It does not matter that Defendant has yet to supply Plaintiff with a complete accident history for County Road 71, because Defendant's decision has immunity.

After the court issued its order for summary judgment, the county supplied the accident history Johnson had earlier requested. In the years 1978–81, there were seven accidents on that segment of road. Three were "run off the road" accidents, and four were of an unknown type. One other accident involved a personal injury.

## ISSUE

Is Nicollet County entitled to immunity from suit on the basis that its failure to place guardrail along the river bank is a discretionary act?

## ANALYSIS

■ Municipalities are immune from liability for claims "based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1980). Discretionary immunity must be narrowly construed in light of the fact that it is an exception to the general rule of governmental liability. *See Larson v. Independent School District No. 314*, 289 N.W.2d 112, 120 (Minn.1979).

■ In actions alleging that a governmental body failed to safely maintain roads and sidewalks, case law consistently holds that the discretionary act exception does not apply. Counties have a common-law duty to maintain streets and sidewalks in a reasonably safe condition. *See Hansen v. City of St. Paul*, 298 Minn. 205, 214 N.W.2d 346, 348 (1974); *Lopes v. Rostad*, 45 N.Y.2d 617, 384 N.E.2d 673, 412 N.Y. S.2d 127 (1978).[2] In addition, counties have a statutory duty to construct, reconstruct, improve, and maintain county highways. *See* Minn.Stat. § 163.02 (1980). In *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801 (Minn.1979), the court said:

> [T]he legal duties owed by municipalities as owners and operators of buildings, roadways, or other facilities * * * are analogous to those owed by private persons, and a breach of such duties can be the basis of a lawsuit against the municipality just as it can be the basis of a lawsuit against private tortfeasors.

---

**2.** *See also Robinson v. Hollatz,* 374 N.W.2d 300, 303 (Minn.Ct.App.1985) (a municipality's failure to remove snow plowed onto a median is not a discretionary act); *Ostendorf v. Kenyon,* 347 N.W.2d 834 (Minn.Ct.App.1984) (the State's failure to place warning signs on a hazardous road was not a discretionary act because "[as] part of its duty to maintain highways, the State must repair or warn drivers of dangerous situations").

279 N.W.2d at 803. Liability is limited, however, to those cases where the municipality has notice, actual or constructive, of the defective condition. *Hansen*, 214 N.W.2d at 348.

■ The courts have attempted to distinguish a discretionary duty from a legal one by using a discretionary/ministerial analysis or a planning/operational analysis. *See Cairl v. State*, 323 N.W.2d 20, 23 n. 2 (Minn.1982). Courts, through the vehicle of a negligence action, are not an appropriate forum to review governmental policy or legislative decisions. *Id.* at 23. *See also Young v. Wlazik*, 262 N.W.2d 300, 311 (Minn.1977) (city's failure to close a street and passage of a train speed limit are discretionary acts); *Bjorkquist v. City of Robbinsdale*, 352 N.W.2d 817, 819 (Minn. Ct.App.1984) (the timing of a traffic control semaphore is discretionary because the city had "no obligation to time the lights a particular way"). Decisions to implement policy decisions are made at the operational level, however, and can readily be reviewed under judicially manageable tort standards of due care and reasonableness. *Butler v. State*, 336 N.W.2d 416, 420 (Ia.1983).

■ The trial court concluded that Nicollet County was entitled to immunity because it had no specific duty to place guardrail at the scene of the accident. We disagree. The county's common-law and statutory duties to maintain reasonably safe roads may encompass the duty to place guardrail along a road that is known to be hazardous. *See Foster v. United States*, 183 F.Supp. 524 (D.N.M.1959), *aff'd*, 280 F.2d 431 (1960) (failure to place guardrail on bridge over canal not within discretionary function exception); *State v. Webster*, 88 Nev. 690, 694, 504 P.2d 1316, 1319 (1972) ("[w]here a railing or barrier is reasonably necessary for the security of travelers on the street, which from its nature would otherwise be unsafe, and the erection of which would have prevented the

injury, it is actionable negligence not to construct and maintain such railing or barrier") (quoting *Pardini v. City of Reno*, 50 Nev. 392, 401, 263 P. 768, 771 (1928)); *cf. Butler v. State*, 336 N.W.2d at 420 (decisions made concerning the design and placement of guardrail are not discretionary). The decision not to place guardrail was made in implementing the county's policy decision to permit public use of the road, which the county engineer acknowledged is hazardous, and is to be judged according to the county's duty to use due care to make the road reasonably safe for the public. *See Butler v. State*, 336 N.W.2d at 420.

Johnson has presented sufficient evidence of negligence and notice to avoid summary judgment. The jury may evaluate the reasonableness of the county's decision not to place guardrail at the scene of the accident by considering all the factors suggested in the present county engineer's affidavit.[3]

Because of our decision on this issue, we do not reach Johnson's alternative argument that Nicollet County waived its discretionary act immunity by purchasing liability insurance.

## DECISION

The county is not entitled to discretionary act immunity in this action alleging negligent failure to maintain the safety of a county road.

**Reversed and remanded for trial.**

FOLEY, Judge (concurring specially).

I concur in the result but assert as well that the County waived its immunity by purchasing liability insurance. Minn.Stat. § 466.06 (1984) provides:

The governing body of any municipality may procure insurance against liability of the municipality and its officers,

---

**3.** The trial court concluded that the county "does not have the resources to place guardrail on every road," and therefore had to balance the competing factors relating to cost and benefit of a guardrail at a certain location. This conclusion is for the jury to make after weighing all the evidence, including any testimony of Robert Koppen consistent with his deposition statement that expense was not a reason why there was no guardrail at the accident site.

employees, and agents for damages resulting from its torts and those of its officers, employees, and agents, including torts specified in section 466.03 for which the municipality is immune from liability. * * * The procurement of such insurance constitutes a waiver of the defense of governmental immunity to the extent of the liability stated in the policy * * *.

The reasons for the waiver were stated compellingly in *Schoening v. United States Aviation Underwriters, Inc.,* 265 Minn. 119, 128–29, 120 N.W.2d 859, 865 (1963):

[W]here a municipality expends public funds for the purchase of liability insurance, such expenditure constitutes a waiver by the municipality and its insurer to the extent of the policy coverage. Were we to hold otherwise, the funds so expended would be mere gifts to the insurance carriers. In accepting the premium payments the insurer thereby accepts the risk growing out of the municipality's ownership and operation of municipal facilities. The real effect of this rule is not to deprive the municipality of any right inherent in, and essential to, its governmental functions, but is only to make an insurance carrier liable for the losses which it has contracted to cover in its policy.

*See also Geislinger v. Village of Watkins,* 269 Minn. 116, 123, 130 N.W.2d 62, 67 (1964) (village waived its right to assert immunity defense by purchasing liability insurance).

In answers to interrogatories, the County stated that it had purchased liability insurance from Home Insurance Company with a policy limit of $300,000. We note that Johnson's attorney failed to argue to the trial court that the County had waived any immunity. He argues on appeal that the trial judge was aware of the settlement with Susan Clark and that the County's attorney was well aware of the insurance.

While in a recent case, *Wilson v. Ramacher,* 352 N.W.2d 389, 393 (Minn.1984), the supreme court refused to consider the issue of whether a city's purchase of liabili-

ty insurance was a waiver of discretionary immunity because the plaintiff failed to present the issue to the trial court, it would seem that Minn.R.Civ.P. 60.02, subd. 6, "any other reason justifying relief from the operation of the judgment," should be invoked and applied here as additional reason to relieve Johnson from the effects of summary judgment. There was ample evidence in the file to suggest the existence of liability insurance by the county. Whether directly asserted by Johnson or not, a policy did, in fact, exist. Since public funds were spent to procure the insurance policy, Johnson should be given the benefit of the policy should he recover at trial.

Upon remand, the trial court should carefully review both the statute and the policy terms to determine the full extent, if any, of a waiver of immunity by the County.