**Gerald L. NORDBROCK, Harley W. Batie, Gene L. Osborn, Irving R. Dana, William L. Larson and Mt. Pleasant Company, Appellants,**

v.

**STATE of Iowa, Iowa State Banking Board, Superintendent of Banking of the State of Iowa, and the Iowa Department of Banking, Appellees.**

No. 85–1720.

Supreme Court of Iowa.

Nov. 12, 1986.

Lawrence L. Marcucci and John C. Conger of Williams, La Marca, Marcucci, Wiggins & Anderson, West Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., Brent R. Appel, Deputy Atty. Gen., and William F. Raisch and James M. Redmond, Asst. Attys. Gen., for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ and CARTER, JJ.

SCHULTZ, Justice.

In this appeal we must decide whether shareholders of a bank have a valid tort action against the State and its agencies for alleged negligence in bank examinations and supervision, which led to the

bank's insolvency. Plaintiffs' action under Iowa Code chapter 25A (1983), the Iowa Tort Claims Act, was dismissed by the trial court on the grounds that the conduct of which plaintiffs complained fell within statutory exceptions, and that the relevant banking statutes did not create a duty to the plaintiffs which could give rise to tort liability. Because we believe the alleged conduct fell within the discretionary function exception to state tort liability, we affirm.

Plaintiffs Gerald L. Nordbrock, Harley W. Batie, Gene L. Osborn, Irving R. Dana, and William L. Larson purchased stock in the Mount Pleasant Bank & Trust Company in 1979 and formed a holding company, plaintiff Mount Pleasant Company. In 1985, plaintiffs commenced this action pursuant to chapter 25A against the State of Iowa, Iowa State Banking Board, Superintendent of Banking of the State of Iowa, and the Iowa Department of Banking. This tort claim alleges in substance that defendants failed to carry out their responsibilities to properly examine, supervise, and regulate the bank, and that these failures ultimately caused the bank to be closed, resulting in plaintiffs' loss. Interesting, but not significant to the outcome of this appeal, are allegations concerning loans made to the Prairie Grain Company and its deceased owner, a company which has provided our courts with a continuing saga of financial loss and ruin. *See Adam v. State*, 380 N.W.2d 716, 717–18 (Iowa 1986).

The trial court dismissed this action for three reasons. First, claims of the plaintiffs that are based on actions taken in reliance on the state bank examination reports would be barred by the misrepresentation exception, Iowa Code section 25A.14(4). Second, claims that the defendant did not conduct a proper audit or examination of the bank and failed to require the bank to follow banking laws are barred by the discretionary function exception, section 25A.14(1). Third, no private cause of action exists for the relief sought by the plaintiffs. On appeal, plaintiffs challenge each of these grounds. As we believe the discretionary function exception is applicable to all of the allegations in plaintiffs' petition, we limit our discussion to that exception.

I. *The planning-operational test.* The abrogation of sovereign immunity under section 25A.4 generally means that the same principles of tort liability apply to the State and its employees as apply to private tortfeasors. Iowa Code § 25A.2(5). Exceptions to this general rule are provided in section 25A.14:

The provisions of this chapter shall not apply with respect to any claim against the state, to:

1. Any claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state....

We established guidelines for determining whether an act fell within the discretionary function exception by adopting the federal test for an identical exception in the Federal Tort Claims Act, 28 U.S.C. § 2680(h) (1982), which involves classifying the act as either "planning" or "operational." *Stanley v. State*, 197 N.W.2d 599, 602–04 (Iowa 1972). In that case we adopted the planning-operational dichotomy set forth in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) and *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). Since *Stanley* we have continued to rely upon federal interpretations in applying this test. *See Adam v. State*, 380 N.W.2d 716, 725–26 (Iowa 1986); *Metier v. Cooper Transport Co.*, 378 N.W.2d 907, 911 (Iowa 1985); *Butler v. State*, 336 N.W.2d 416, 419 (Iowa 1983); *Lewis v. State*, 256 N.W.2d 181, 195 (Iowa 1977). In *Butler* we indicated that the planning level is generally the policy-making stage and decisions made at that level involve the formulation of policy. *Butler*, 336 N.W.2d at 419. On the other hand, actions at the

operational level implement the decisions that were made at the planning level. *Id.*

It is necessary for us to apply these principles in the context of a motion to dismiss by the defendants. On questions arising from a ruling on a motion to dismiss, we take the allegations in the petition as true and construe the allegations in the light most favorable to the pleaders. *Clark v. Mincks*, 364 N.W.2d 226, 228 (Iowa 1985).

II. *Application to the Iowa Banking Law.* Plaintiffs maintain that application of the planning-operational test to the defendants' statutorily mandated supervision and regulation duties must result in a determination that those duties are operational, and thus outside the discretionary function exception. Indeed the allegations in plaintiffs' petition are directed at activities that would normally be considered the day-to-day execution by employees of duties prescribed by an employer. Defendants allegedly were negligent in a variety of ways in the examination and supervision of the bank, including failure to discover and report bad loans, fraud, overstatement of warehouse receipts, and many other alleged inappropriate actions by banking department employees regarding this particular bank.

The State urges that the Iowa Banking Act, Iowa Code chapter 524, vests broad authority in the banking superintendent to determine the scope, intensity and quality of the banking regulations, thereby casting the operation of the statute under the discretionary function exception. The State maintains that the examination and regulation of banks is unlike grain dealer inspections, to which we recently refused to apply the discretionary function exception in *Adam*, 380 N.W.2d at 725–26. It points out that the Grain Dealers Act, Iowa Code chapter 542, imposes on the Iowa State Commerce Commission duties to inspect, sets specific standards to be met by licensees, and provides mandatory sanctions if those standards are not met. The regulation of banks, in contrast, is left by the legislature to the superintendent's sound discretion. To examine these contentions we examine the banking department's statutory framework.

Iowa Code chapter 524 provides the department of banking, through its superintendent, with broad powers under a general statement of policy, but gives very little specific direction concerning the exercise of these powers. The statute's only statement of purpose directed at the banking department is as follows:

> The general assembly declares as its purpose in adopting this chapter to provide for:
>
> .    .    .    .    .
>
> The delegation to the superintendent of adequate rule-making power and administrative discretion, in order that the supervision and regulation of state banks may be flexible and readily responsive to changes in economic conditions and changes in banking and fiduciary practices.

Iowa Code § 524.102(8). The administrative discretion afforded the superintendent is further exemplified by the qualification requirement of at least five years' experience in a bank or in the regulation or examination of banks. § 524.201. This legislative scheme of broad, general power is continued in the job description, which states: "The superintendent shall have general control, supervision, and regulation of all state banks...." § 524.213. The State Banking Board, on the other hand, has a more limited function in that it "shall act with the superintendent in an advisory capacity concerning all matters pertaining to the conduct of the administration of the provisions of this chapter." § 524.205(4). The legislature has provided the superintendent authority to employ assistants, examiners and other employees; however, it has not prescribed their duties except that they are to be appointed "as necessary to the proper discharge of the duties imposed upon the superintendent." § 524.208.

Legislative direction to the banking superintendent and staff concerning regulation, supervision and examination of banks

is meager and policy matters are largely left up to the superintendent. The superintendent is provided no specific direction in the matter of conducting examinations, other than a requirement that examinations be done once every 18 months. § 524.217(1). A superintendent is only instructed to "inquire" into a bank's "financial condition, the security afforded to those to whom it is obligated, the policies of its management, whether the requirements of law have been complied with in the administration of its affairs, and such other matters as the superintendent may be prescribe." *Id.* Additionally, the chapter does not require the superintendent to take any particular regulatory action when an examination uncovers illegal, unsafe, or unsound practices. The superintendent "may" issue notices alleging that a state bank has violated or is about to violate state law or is engaged in an "unsafe or unsound" banking practice. § 524.223. Sections granting the superintendent authority to issue cease and desist orders, to apply to the district court to enforce such orders, and to take over the management of a bank are also prefaced by the discretionary term "may." §§ 524.-223–.224. Reports of bank examinations are confidential and are not public information. § 524.217(6). We believe it is fair to state that the legislature has left regulation, supervision, and examination of the state banks to the superintendent's sound discretion. The parties have not raised the question of an unconstitutional delegation of legislative power to the superintendent, and thus we need not reach that issue.

Although the superintendent possesses rulemaking power, that power has not been exercised to place structured operational duties on banking department employees. No such administrative rules detailing ministerial or operational duties have been brought to our attention by the parties, and our own examination of the Iowa Administrative Code reveals no implementation of rules concerning duties to be carried out by the superintendent's subordinates.[1] Conse-quently, plaintiffs cannot claim that banking department employees failed to follow duties imposed by administrative rules.

The superintendent's broad discretion in regulating and supervising banks assumes importance when we analyze our recent decision in *Adam v. State,* 380 N.W.2d 716 (Iowa 1986). We rejected the State's argument in that case that plaintiff's claim of negligence by state grain inspectors was barred by the discretionary function exception. We reasoned that the inspectors were in the execution phase of Iowa Code chapter 542, and that they did not have discretion to carry out those duties without due care. *Id.* at 725–26. The ministerial activities of the inspectors in *Adam* bear some similarity to the alleged duties of the bank examiners. The duties in *Adam,* however, arose from the implementation of specific statutory requirements. The legislature by specifying those duties had made the policy decisions in advance. *Id.* at 726. The termination of an individual dealer by the Commerce Commission would be an execution of the legislature's planning decision, and the Commission inspectors had no discretion in deciding whether or not to license an insolvent elevator. *Id.* at 725.

Chapter 524, on the other hand, does not provide legislative direction concerning the supervision and inspection of banks. Policy determinations are to be made by the superintendent. The banking superintendent and the examiners simply do not have mandatory enforcement duties like those the legislature placed on the Commerce Commission and its employees by means of chapter 542. Having made this distinction, we must decide whether the superintendent's broad authority on matters of policy and enforcement concerning bank operations causes the alleged wrongful activities to fall within the discretionary function exception. We turn to federal authority to aid in this determination.

---

1. The Iowa Administrative Code provides "all bank examiners perform such duties as the superintendent prescribes, including general su-pervision over the banks located in the territory to which they are assigned." 140 Iowa Admin. Code § 1.3(2)(a).

**III.** *The nature and quality of the acts.* Although the United States Supreme Court in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), originated the planning-operational test to determine whether decisions challenged under the Federal Tort Claims Act were discretionary, it also observed that

> [T]he "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decisions there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.

346 U.S. at 35–36, 73 S.Ct. at 968, 97 L.Ed. at 1440–41 (footnote omitted). We believe this language supports the State's theory that the exception covers situations in which a governmental agency is given broad powers to determine the scope of its regulation of the conduct of private parties, without legislative interference. When the agency is given these powers, it assumes the legislative role and its actions are a part of the "planning" rather than "operational" process.

More recently the Court affirmed the proposition that where there is room for policy judgment and decision, there is discretion which fits the exception. *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 811, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660, 673 (1984). In that case the Court rejected claims against the government for negligently issuing inspection certificates when the government had done only spot checks on the inspections conducted by the manufacturer itself. The Court concluded that the certification process was the result of a policy judgment by the agency, which was discretionary. In making this determination, the Court set forth and discussed two factors helpful in determining whether the government employee falls within the protection of the exception: (1) the nature of the conduct, rather than the status of the actor; and (2) whether the government was acting in its role as regulator of the conduct of private individuals. 467 U.S. at 813–14, 104 S.Ct. at 2765, 81 L.Ed.2d at 674. The first factor emphasizes the nature and quality of the act that Congress intended to shield, rather than the rank of the employee. 467 U.S. at 813, 104 S.Ct. at 2765, 81 L.Ed.2d at 674. The Court further explained the second factor by noting that Congress had exempted by name two major regulators, and that its emphasis was on protecting the role of the regulator: "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." 467 U.S. at 814, 104 S.Ct. at 2765, 81 L.Ed.2d at 674–75.

Application of these factors strongly suggests that the allegations of negligence in the present case fall within the discretionary function exception. Most of the claims of wrongdoing apply to the behavior of field bank examiners. The conduct complained of was in the nature of a policy decision, regardless of the fact that it was done by examiners rather than by the superintendent or the legislature. As to the first factor, then, these acts should come within the protection of the discretionary function exception. This brings us to the second factor concerning whether the conduct arose out of regulatory activities, rather than out of the operational phase of carrying out statutorily mandated duties, as did the conduct of the grain dealer inspectors in *Adam.* We believe that it arose out of the agency's role as regulator.

Neither the superintendent of banking nor his subordinates are given statutory directions on how to proceed when they discover fraud, illegal activity by bankers, or any other illegal, unsafe, or unsound practices by banks. Rather, the superintendent of banking is given a variety of alternatives for discretionary action which

may be taken by his office. No direction is given as to the use of particular alternatives. The superintendent is given broad discretionary power, legislative in nature, to carry out his role as a regulator of state banks. It is this very type of conduct that *Varig* indicates should not be subject to second-guessing through the medium of an action in tort. This is not to say, however, that a bank examiner should escape liability for all torts that might be committed during a bank examination, even, for instance, a negligent act involving the use of an automobile that causes personal injury to another. We confine this ruling to activities directly related to the regulation of the banks.

In interpreting the federal discretionary function exception, the federal courts generally have held that government enforcement and regulation of financial institutions constitutes a discretionary function falling within the exception. *See, e.g., Emch v. United States,* 630 F.2d 523, 528–29 (7th Cir.1980) (action claiming negligence in the regulation and examination of bank is precluded by exception); *Huntington Towers, Ltd. v. Franklin National Bank,* 559 F.2d 863, 870 (2d Cir.1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978) (claim that bank examinations were conducted negligently when examiners failed to appoint a receiver is precluded by discretionary exception); *FSLIC v. Williams,* 599 F.Supp. 1184, 1200 (D.Md.1984) (counterclaim alleging examiners' breach of duty barred by discretionary function exception when acts complained of were exercises of congressionally authorized discretion); *David v. FDIC,* 369 F.Supp. 277, 280 (D.Colo.1974) (in suit by depositor in a closed bank alleging negligence in failing to disclose information, failure to disclose did not cause loss to the plaintiff because further action would have been discretionary with FDIC). In *Emch* the claims were similar to those in the present case.

> From this language it is clear that the administrative level claims [failure to properly and adequately supervise, examine and control the condition, perform-

ance, operation, liquidity and solvency of American City Bank and Trust Company] were an attempt to saddle the government with liability on the basis of its failure, in the course of its statutory regulatory activities, to anticipate the financial difficulties of American City Bank, to insure honesty and competency of its officers, and to successfully prevent the losses to American Bankshares' stockholders which resulted from the bank's various difficulties. These are claims of the type which section 2680(a) was designed to preclude, and largely for this reason they were deemed inadequate by the administrative agencies against which they were made.

630 F.2d at 528–29. We believe this reasoning is also applicable to the case at hand. The claims of negligence made by plaintiffs fall within the regulatory activities of the banking superintendent and his representatives, and the State, its agencies and employees are exempt from liability under the discretionary function exception.

AFFIRMED.