Brian A. PLETAN and Pamela J. Pletan,
as Trustees for the heirs of Shawn
L. Pletan, Appellants,

v.

Kevin J. GAINES, et al., Defendants,

Boyd Barrott, et al., Respondents,

and

Allstate Insurance Company,
Intervenor.

No. C3-90-298.

Court of Appeals of Minnesota.

Sept. 11, 1990.

Review Denied Nov. 1, 1990.

Steven D. Emmings, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Fairfax, for appellants.

Bruce A. Peterson, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for respondents.

James R. Peterson, Legal Assistance to Minnesota Prisoners, Thomas E. Peterson, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for defendants.

Robert H. Tennant, Bell, Arcand, Florin & Tennant, St. Paul, for intervenor.

Considered and decided by WOZNIAK, C.J., and CRIPPEN and SCHULTZ *, JJ.

## OPINION

WOZNIAK, Chief Judge.

Appellants Brian and Pamela Pletan, as trustees for the heirs of their son Shawn Pletan, challenge the trial court's award of summary judgment in favor of respondents Sgt. Boyd Barrott and the City of Crystal. The trial court held that under Minn.Stat.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

§ 466.03, subd. 6 (1988), respondents were immune from liability for Shawn's death, which occurred during a high speed chase. We reverse and remand.

## FACTS

In the afternoon of September 28, 1987, Sgt. Boyd Barrott received a radio transmission that a "snatch and grab" shoplifting incident had taken place at a children's clothing store in Crystal. With a description of the suspect, the vehicle, the license plate number, and the direction the vehicle was heading, Barrott located the vehicle, traveling approximately 60 m.p.h. down West Broadway in Crystal. Barrott turned on his red lights and sirens and pursued the suspect.

At times, both vehicles exceeded 75 miles per hour in a 45–mile per hour zone. Barrott followed the vehicle, eventually passing through the intersection of Highways 169 and 100. On approaching the intersection at 42nd Avenue and Highway 81, the suspect slowed down to 30 miles per hour, rammed apart two cars which were stopped for the signal light, and went through the red light. Barrott followed through the space the suspect had created by ramming his way between the two cars, and he went through the red light. At 41st Avenue, the suspect was weaving and he struck another vehicle. Again, the suspect and Barrott went through a red light.

While approaching 40th Avenue, Barrott saw a pair of small legs as he looked under a truck stopped in the left turn lane. Barrott locked up his brakes. As Shawn Pletan ran into the intersection, the suspect's vehicle struck him and went through a red light. The boy hit the windshield, was thrown 25 to 30 feet into the air, landed in the oncoming traffic lanes, and was killed. Barrott testified that, for the first time, he contemplated abandoning the pursuit, but felt it was so evident the child would not survive that he should continue after the fleeing vehicle. He radioed for assistance.

After the collision, the suspect accelerated, but within two blocks he lost control of his vehicle and was then apprehended. The suspect, Kevin Gaines, later pleaded guilty to first degree manslaughter and was sentenced to 90 months in prison.

Appellants brought this action against Gaines, Barrott, the City of Crystal, and Independent School District No. 281. The trial court granted summary judgment for Barrott and the City of Crystal, finding both immune from liability.[1] Appellants challenge this determination.

## ISSUE

Did the trial court err in concluding that Sgt. Barrott and the City of Crystal are immune from liability under Minn.Stat. § 466.03, subd. 6 (1988)?

## ANALYSIS

■ In reviewing this summary judgment determination concerning municipal immunity, we will not defer to the trial court's application of the law to undisputed facts. *See A.J. Chromy Construction Co. v. Commercial Mechanical Services,* 260 N.W.2d 579, 582 (Minn.1977).

A municipality is liable for the actions of employees within the scope of their employment. Minn.Stat. § 466.02 (1988). However, municipalities are not liable for claims based upon their employees' performance of "discretionary functions." Minn.Stat. § 466.03, subd. 6 (1988).

1. Because the trial court concluded that discretionary immunity applied, it did not address Barrott's claim of official immunity or the issue of proximate cause. While the analysis of official immunity also requires an examination of the nature of the officer's decision to determine whether he exercised judgment or discretion, the analysis is distinguishable. We are mindful of our supreme court's decisions regarding police liability for decisions made under exigent circumstances, but the cases do not deal directly with *municipal* immunity or the discretionary function exception. *See Johnson v. Morris,* 453 N.W.2d 31 (Minn.1990); *Elwood v. Rice County,* 423 N.W.2d 671 (Minn.1988). The scope of governmental and official immunity differ, the definition of discretion to be applied differs, and "it is analytically unsound to equate governmental discretionary immunity with official discretionary immunity." *Holmquist v. State,* 425 N.W.2d 230, 233 n. 1 (Minn.1988). We decline to offer an advisory opinion on Barrott's claim of official immunity or on his potential liability.

Read literally, the discretionary function exception would preserve immunity for almost all government acts because almost everything a government employee does, from driving a snow plow to formulating toxic waste disposal regulations, involves the exercise of some discretion.

*Holmquist v. State*, 425 N.W.2d 230, 231 (Minn.1988). In adopting the discretionary function exception, the legislature did not intend to repeal "the general rule of allowing recovery for those injuries negligently inflicted in the performance of government operations." *Id.* (citation omitted). Although almost every act of a governmental employee involves some measure of discretion, not every act is entitled to immunity. *Cairl v. State*, 323 N.W.2d 20, 23 (Minn. 1982). The exception must be narrowly construed, with particular attention to the underlying purpose. *Holmquist*, 425 N.W.2d at 231.

■ The burden is upon the municipality to establish that the specific conduct or decision complained of is within the exception. *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 722 n. 6 (Minn.1988). The fundamental inquiry is whether the challenged decision or conduct involves a policymaking decision entrusted to a political branch of government. *Holmquist*, 425 N.W.2d at 232. The discretionary function exception avoids judicial interference and "second guessing" of executive and legislative policymaking. *Id.* at 231.

■ The exception protects policy decisions which reflect a balancing of "political, economic, and social considerations," but it does not insulate a municipality from liability for an employee's exercise of professional judgment in the *implementation* of an established policy. *Nusbaum*, 422 N.W.2d at 719–20. The employee's application of an established policy to a particular fact situation is beyond the discretionary function exception, even if it calls for special knowledge, expertise, and professional judgment. *Holmquist*, 425 N.W.2d at 234.

■ The Crystal Police Department Vehicular Pursuit Policy identifies the first responsibility of the unit initiating pursuit to be "apprehension of the suspects without unnecessary damage to themselves or other persons." In determining whether or not to continue a pursuit, the officer must consider the seriousness of the crime, present danger, the length of the pursuit, and the possibility of identifying the suspect at a later time. The officer must discontinue the pursuit when there is a clear danger to the officer or the public, such as "when the speeds dangerously exceed normal traffic flow or when pedestrians or vehicular traffic necessitate unsafe maneuvering of the vehicle."

Officer Barrott was required to weigh the factors set forth in the pursuit policy and to determine whether to begin, and later whether to continue, a high-speed chase of the suspect. Where employees must apply factors set forth in a policy manual and the policy leaves room for the exercise of professional judgment in its implementation, the municipality may not escape liability by claiming that its employee's exercise of judgment is a discretionary function. *Nusbaum*, 422 N.W.2d at 723. Alone, the professional evaluation of complex factors does not "convert" an operational decision into a discretionary function, absent a demonstration that immunity is essential to avoid judicial interference with governmental policymaking. *Holmquist*, 425 N.W.2d at 232.

The Eighth Circuit Court of Appeals has held that "the rationale for the exception falls away" when an employee allegedly gives inadequate consideration to safety risks to the public, and the government, when implementing an established policy, is not protected by the discretionary function exception. *Aslakson v. United States*, 790 F.2d 688, 693 (8th Cir.1986). Similarly, the plaintiffs allege that Barrott gave inadequate consideration to safety risks when implementing the city's pursuit policy, and the discretionary function exception is inapplicable. The focus of this suit is upon Barrott's *implementation* of an established policy, and not upon the policymaking itself.

Our supreme court has imposed liability upon a city for failing to protect citizens

from a dangerous instrumentality loosed by another upon the public streets and sidewalks. *Hansen v. City of St. Paul,* 298 Minn. 205, 214 N.W.2d 346 (1974) (city liable for officers' failure to capture dangerous dogs after verifying that they were roaming the neighborhood). The court held that the decision of city employees to permit the continued exposure of citizens to a known danger occurred at an operational level and was not within the discretionary function exception. *Id.* at 212, 214 N.W.2d at 350–51. Where the challenged governmental activity involves failure to give adequate consideration to safety factors under an established policy, the government is liable for the negligence of its employees. *Nusbaum,* 422 N.W.2d at 721.

Similarly, Officer Barrott must have known that the suspect's high speed, his demonstrated disregard for traffic control devices during the chase, and his repeated collisions with other vehicles to escape apprehension endangered members of the public occupying other vehicles, at least. Appellants claim that in deciding to begin the chase following a report of the theft of property, and then to continue in high-speed pursuit, Officer Barrott gave inadequate consideration to the safety risks to others on the public streets. These decisions, made in implementing an established city policy, occurred at the operational level, and the city is not protected by discretionary immunity.

We reject the city's claim that exposure to potential liability in this case will impair the effective performance of the police. *See Cairl v. State,* 323 N.W.2d 20, 23 n. 3 (Minn.1982) (effect upon governmental performance is "significant consideration in determining the applicability of discretionary immunity"). *Cairl* involved a challenge to an established statewide policy favoring open door treatment of mentally ill persons. *Id.* at n. 1. The court concluded that potential liability would undermine the statewide policy. *Id.* There is no analogous statewide policy favoring high-speed chases on our public streets.

Unlike the situation in *Cairl,* imposing liability in this case would not necessarily call into question the municipality's *policy* requiring officers to weigh various factors, including the seriousness of the reported crime, in deciding when to engage in a high-speed chase. The Pletans concede that the city's adoption of the pursuit policy, with the inherent choice of which factors must be considered by an officer, is protected. We agree with the trial court that an officer's "split-second decision to act" requires the exercise of professional judgment under high stress. However, the implementation of an established policy in a particular fact situation is not within the discretionary function exception, even if that application calls for specialized knowledge, expertise, and professional judgment. *Holmquist,* 425 N.W.2d at 234.

Police departments may be liable for the foreseeable consequences of reckless pursuits. *See Brower v. Inyo County,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (use of roadblock to stop fleeing suspect may give rise to liability under 42 U.S.C. § 1983). Our own legislature has indicated that liability may arise if drivers of emergency vehicles violate the duty of care imposed by statute. Drivers of emergency vehicles may not operate their vehicles upon the public streets with reckless disregard for the safety of others. Minn. Stat. § 169.17 (1988). "[L]iability arising out of the operation of emergency vehicles is predicated upon negligence." *Cairl v. City of St. Paul,* 268 N.W.2d 908, 911–12 (Minn.1978). Simply put, municipalities are not immune from liability for all havoc wreaked by employees driving police cars and other emergency vehicles. Negligent driving conduct gives rise to liability.

The degree of care exercised by police also affects the suspect's liability. A fleeing suspect who injures another or causes property damage is liable, for insurance purposes, for all losses arising out of the use of a police officer's vehicle if the officer in pursuit "is acting in the lawful discharge of an official duty." Minn.Stat. § 65B.605, subd. 3 (1988). The suspect is *not* liable where the police officer fails to exercise "reasonable care." *Id.* The lack

of reasonable care by the officer relieves the fleeing suspect of insurance liability for damage caused by the officer's vehicle.

Similarly, one of the issues for the jury in this case is whether Officer Barrott exercised reasonable care in electing to pursue the suspect. (The jury must also determine whether the officer's actions caused the injury.) The city's pursuit policy established a standard of care requiring that a chase be discontinued when there is a "clear danger" to the public. Just as the liability of suspects is affected under Minn. Stat. § 65B.605 by the care exercised by an officer in pursuit, and as liability may be imposed for the negligence of drivers of emergency vehicles where their driving conduct violates the standard of care imposed by Minn.Stat. § 169.17, the jury in this case must determine whether the standard of care imposed by the city's pursuit policy was violated.

Police officers in Crystal are required to apply the pursuit policy in the course of their work. Officer Barrott was not called upon to weigh broad policy considerations in formulating a unique tactical response to a situation not contemplated by written policies. *Cf. Dahlheimer v. City of Dayton,* 441 N.W.2d 534, 539 (Minn.App.1989), *pet. for rev. denied* (Minn. Aug. 15, 1989). Barrott was called upon to apply a written policy in a situation specifically contemplated by that policy. The Supreme Court has held that decisions relating to the apprehension of fleeing suspects may give rise to liability. Similarly, municipalities may not claim discretionary function immunity for police conduct simply because police officers must weigh the relevant factors governing high-speed chases under exigent circumstances. Innocent children should not be forced to bear the risk that police officers will give inadequate consideration to the safety of those in the path of speeding vehicles.

### DECISION

The trial court erred in ruling that the city and officer are entitled to discretionary immunity for the pursuit. We do not address the issues reserved by the trial court.

On remand, the court must rule on Barrott's separate claim of common law official immunity and on respondents' motion for summary judgment on the issue of proximate cause.

Reversed and remanded.