**INVEST CAST, INC., Appellant,**

v.

**CITY OF BLAINE, and Spring Lake Park Fire Department, Inc., Respondents.**

**No. C5–90–2635.**

Court of Appeals of Minnesota.

June 4, 1991.

Review Denied Aug. 1, 1991.

Tony R. Krall, Hanson, Lulic & Krall, Minneapolis, for Invest Cast, Inc., appellant.

Robert H. Peahl and James F. Mewborn, Peahl & Day, Minneapolis, for City of Blaine, respondent.

Katherine L. MacKinnon, Lindsay G. Arthur, Jr., and Blake W. Duerre, Arthur, Chapman & McDonough, Minneapolis, for Spring Lake Park Fire Dept. Inc., respondent.

Considered and decided by PARKER, P.J., and NORTON and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Invest Cast, Inc., seeks recovery against the Spring Lake Park Fire Department and the City of Blaine for fire damage to its building. The trial court granted summary judgment denying the claims, based on municipal immunity. Invest Cast, Inc., appeals. We affirm as to the city and reverse as to the fire department.

## FACTS

On the morning of May 2, 1985, a fire occurred at a building leased by Invest Cast, Inc., in Blaine, Minnesota. The Spring Lake Park Fire Department provided fire service to this part of Blaine. The area did not have city water or fire hydrants.

Invest Cast, Inc., used a large amount of paraffin wax in its manufacturing process. The paraffin wax was stored in the main building, which was of cement block construction. On the south side of the building was a wood frame lean-to with a roof, but no walls. The floor was a cement slab which slanted away from the main building. In the lean-to was the flasher, a machine used to melt wax out of ceramic molds. The fire originated near the flasher in the lean-to structure.

There is some evidence to establish the following as fact: An employee of Invest Cast, Inc., explained to one of the Spring Lake Park firefighters that the fire was confined to the lean-to and there was a large amount of paraffin wax in the main building. The Invest Cast, Inc., employee then suggested that the fire department bring their hoses inside the building so as to fight the fire from the inside out. The fire department also was warned by employees of Invest Cast, Inc., not to apply water directly on the fire because of the burning paraffin wax. Nonetheless, the fire department began applying the water in a direct stream pointed toward both the fire and the main building. This allegedly pushed the fire into the main building.

When the fire department began to apply water, there was only one fire truck on the scene and an estimated 500 gallons of water. Because there was no permanent supply of water in the area, the firefighters ran out of water in two to three minutes. Thereafter, it took approximately 20 minutes to get an adequate supply of water.

The fire totally destroyed the lean-to and the main building, including manufacturing equipment and works in process, causing damages in excess of $450,000.

## ISSUES

1. Was summary judgment proper after being once denied?

2. Did the trial court err in ruling that a fire department cannot be held liable for the methods it uses in fighting fires?

3. Did the trial court err in ruling that a city cannot be held liable for failure to provide water service?

## ANALYSIS

The standard of review of the trial court's grant of summary judgment is whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). This court is not bound by the trial court's application of the law to any undisputed facts. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.*, 260 N.W.2d 579, 582 (Minn. 1977).

### 1. *Second Motion for Summary Judgment*

■ Appellant argues that the trial court erred in granting the second motion for summary judgment, claiming that the original denial of summary judgment is the law of the case. We disagree. "[L]aw of the case is a rule of practice, not of substantive law." *Brezinka v. Bystrom Bros., Inc.*, 403 N.W.2d 841, 843 (Minn.1987). Further, as the supreme court explained in *Brezinka:*

> The doctrine of law of the case is distinct from the doctrines of res judicata and stare decisis, even though similar underlying policy considerations are involved. Law of the case applies most commonly to situations where an appellate court has passed on a legal question and remanded to the court below for further proceedings. The legal question thus determined by the appellate court will not be re-examined on a second appeal of the same case.

*Id.*

We hold that consideration of a second motion for summary judgment was proper.

### 2. *Fire Department's Liability*

This case is governed by Minn.Stat. § 466.02 (1984) regarding municipal tort liability. Historically, municipal corporations, including police and fire departments, were immune from suit because of the doctrine of sovereign immunity. *See Gullikson v. McDonald*, 62 Minn. 278, 279, 64 N.W. 812, 812 (1895). In 1968, however, the legislature abolished sovereign immunity and enacted tort liability legislation which provides that:

> [E]very municipality is subject to liability for its torts * * * whether arising out of a governmental or proprietary function.

*See* Minn.Stat. § 466.02 (1984). The legislature preserved sovereign immunity only in circumstances specifically enumerated by statute, including

> [a]ny claim based upon the performance or the failure to exercise a discretionary

function or duty whether or not the discretion is abused.

Minn.Stat. § 466.03, subd. 6 (1984).[1]

> Although almost every act of a governmental employee involves some measure of discretion, not every act is entitled to immunity. * * * The [discretionary function] exception protects policy decisions which reflect a balancing of "political, economic, and social considerations."

*Pletan v. Gaines*, 460 N.W.2d 74, 76 (Minn. App.1990), *pet. for rev. denied* (Minn. Nov. 1, 1990) (citations omitted).

Some firefighting decisions are policy decisions. For example, this court has held that decisions regarding whether to deploy firefighting resources and what quantity of resources to expend cannot form the basis of municipal liability. *See Dahlheimer v. City of Dayton*, 441 N.W.2d 534, 539 (Minn.App.1989), *pet. for rev. denied* (Minn. Aug. 15, 1989); *Frank's Livestock & Poultry Farm, Inc. v. City of Wells*, 431 N.W.2d 574, 579 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 25, 1989). This court has held that the decision by a fire chief not to expend further city resources in fighting a fire was a policy decision. *Dahlheimer*, 441 N.W.2d at 539. This court said:

> [The fire chief's] decision to quit fighting the fire actively was not only a tactical decision, but also a decision involving broader policy considerations such as the amount of resources available, risk to human life, and risk of the fire spreading.

*Id.* Further, the supreme court has stated that on an appropriate record "[f]und allocation is an immune discretionary function." *Andrade v. Ellefson*, 391 N.W.2d 836, 840 n. 4 (Minn.1986).

■ We have not, however, addressed the issue of liability for the methods used by a fire department in fighting a fire. We do so today.

Invest Cast, Inc., does not allege that the fire department was negligent in the amount of resources it utilized in fighting the fire. Rather, the focus of this suit is

**1.** The parties do not dispute the issue of whether the purchase of liability insurance by the city

and the fire department waived immunity to the extent of the insurance.

upon the methods used by the fire department in fighting the fire, i.e., where it positioned its firefighters in relation to the burning building and the timing and method of applying the water.

Appellant argues the fire department was negligent 1) for using a direct stream of water as opposed to a fog pattern, 2) for pushing the fire, which was confined to the lean-to, into the main building, and 3) for fighting the fire in a manner so as to use up the existing water supply without securing an adequate back-up supply.

The relationship of the resources expended to fight a fire and the manner in which the fire department uses those resources is analogous to the relationship between establishing a police department pursuit policy and implementation of that policy. In *Pletan* this court held that a municipality is not entitled to discretionary function immunity from a suit challenging a police officer's decision to conduct a high-speed chase of a fleeing suspect. 460 N.W.2d at 78. This court said:

> [Plaintiffs] concede that the city's adoption of the pursuit policy, with the inherent choice of which factors must be considered by an officer is protected. * * * However, the implementation of an established policy in a particular fact situation is not within the discretionary function exception.

*Id.* at 77.

Similarly, the fire department's decision on how many firefighter personnel and trucks to send to a fire is a policy decision protected as a discretionary function. How the firefighter personnel actually fight the fire, however, is not within the discretionary function exception. The underlying purpose of the discretionary function exception to municipal liability would not be furthered by allowing immunity for negligent firefighting methods. The reason for the discretionary function exception is

to assure that the courts do not pass judgment on policy decisions entrusted to coordinate branches of government.

*Dahlheimer* at 538–39 (quoting *Holmquist v. State,* 425 N.W.2d 230, 231 (Minn.1988)).

The decision where to position the firefighters and the method of applying water require professional judgment.

> Alone, the professional evaluation of complex factors does not "convert" an operational decision into a discretionary function, absent a demonstration that immunity is essential to avoid judicial interference with governmental policymaking.

*Pletan,* 460 N.W.2d at 76.

Decisions regarding firefighting methods are not entrusted to a coordinate branch of government; they are tactical decisions without larger policy implications. Here, according to the affidavit of Invest Cast, Inc.'s, expert:

> [T]he fire would not have communicated to the inside of the building absent some force pushing it. In this case, it appears that the direct stream of water applied by the Fire Department pushed the fire into the main building.

We hold that none of the exceptions to municipal liability under section 466.02 apply to the conduct alleged here. Because the methods used in fighting this fire raise a material issue of fact as to whether the fire department exercised reasonable care in fighting the fire, we reverse the trial court's grant of summary judgment as to the fire department and remand the case for trial.

Our ruling today makes it unnecessary to consider the Invest Cast, Inc., argument that the facts of this case convert a general duty to fight fires into a special duty that is not subject to municipal immunity. The special duty idea is simply a way to avoid sovereign immunity.[2]

---

**2.** The supreme court has ruled that a general duty may be converted to a special duty under certain circumstances:

> "Special duty" is nothing more than convenient terminology * * * for the ancient doctrine that once a duty to act for the protection of others is voluntarily assumed, due care must be exercised even though there was no duty to act in the first instance.

*Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 806 (Minn.1979).

### 3. *City's Liability*

■ Appellant argues that the city is liable for negligence because there were no fire hydrants or other water sources in this part of Blaine.[3] In *Chabot v. City of Sauk Rapids*, 422 N.W.2d 708 (Minn.1988), the city had notice by means of a written report that several storm water sewers in the city were inadequate. Knowledge of the dangerous condition, however, was not sufficient to create a duty that the city make a capital expenditure to correct the inadequacy. The supreme court stated:

> A city has never been required to install a sewer system or to install a system that is adequate to take care of all water. * * * [W]hile there is a duty to repair and maintain, there is no duty to build.

*Chabot*, 422 N.W.2d at 712 (citation omitted).

Further, in *Chabot*, the court refused to usurp the city's discretion to decide whether to allocate funds to implement recommended improvements. *Id.* The court stated:

> Liability has [wrongly] been imposed * * * because the city failed to implement one suggested improvement without properly considering the context of the city's decision or the need to determine which of the many other suggested improvements was to be given priority.

*Id.*

In this case, the city engineer gave testimony that the city conducted a feasibility study and determined that it was not economically feasible to extend sewer and water to this part of Blaine. The balancing of competing factors relating to the cost and benefit of extending sewer and water services is a decision as to fund allocation which is immune from liability.

We hold that the trial court properly determined that the city had discretion to decide whether to allocate funds for water service to this area of Blaine and, thus,

properly granted summary judgment as to the city.

### DECISION

The trial court properly granted the City of Blaine's motion for summary judgment based on municipal immunity, but erred in granting summary judgment for the Spring Lake Park Fire Department.

Affirmed in part, reversed in part, and remanded.

---

**3.** The trial court did not reach the issue of possible respondeat superior liability of the City of Blaine for the acts of the Spring Lake Park Fire Department and it was not argued by appellant on appeal. As a result, that issue has not been preserved and we need not express an opinion on the question.