**SOTA FOODS, INC., Respondent,**

v.

**LARSON–PETERSON & ASSOCIATES, INC., Respondent,**

**City of Park Rapids, Appellant.**

**No. C7–92–1328.**

Court of Appeals of Minnesota.

March 2, 1993.

James B. Wallace, Park Rapids, for Sota Foods, Inc., respondent.

William H. Briggs, Irvine, Ramstad, Briggs & Karkela, Detroit Lakes, for Larson–Peterson & Associates, Inc., respondent.

Thomas M. Countryman and Sean E. Hade, Jardine, Logan & O'Brien, St. Paul, for City of Park Rapids, appellant.

Considered and decided by RANDALL, P.J., and FORSBERG, and SHORT, JJ.

## OPINION

RANDALL, Judge.

Appellant City of Park Rapids and respondent Larson–Peterson & Associates, Inc., both challenge the trial court's denial of their respective defense motions for summary judgment. The motions were based on claims of discretionary immunity. We affirm in part and reverse in part.

## FACTS

In the late 1970's appellant City of Park Rapids (the city) began a process to upgrade its wastewater treatment facility. Respondent Larson–Peterson & Associates, an engineering firm, (the engineers) was retained by the city in connection with this project. Thomas Augustin was head engineer on the project.

In 1979, step one funding was applied for. Federal and state grants were available for the majority of the costs of the project, but the city was to fund ten percent of the total cost. In February of 1982, after extensive study, the engineers presented three alternatives to the city council and also made a recommendation based on their judgment as to what they considered the best option, a pond irrigation system. This system involves a series of three ponds and devices to aerate water and filtrate out impurities. The capacity of the system must be adequate to accept the city's "flow" in gallons, and adequate to accept the amount of organic waste that is in the flow. The amount of organic waste determines the "biological oxygen demand" (BOD) of the system. The BOD is a measure of the oxygen that will be required to break down organic waste in the water. For the system to function properly, the incoming flow of organic waste should not exceed the system's BOD capacity.

Preliminary BOD calculations were based upon existing and projected uses of the system. However, no industrial user of the system had been identified in 1982. Respondent Sota Foods, Inc., was not in existence at that point. The preliminary calculations included some capacity for projected future industrial use.

On January 30, 1985, the city council passed a resolution to construct, operate, and maintain a new system as recommended by the engineers. In February of 1985 the city sold a lot in its industrial park to respondent Sota Foods for a potato processing plant. The city provided a low interest loan for the lot, and the lot was provided with city sewer and water hook ups. In November of 1985 Sota Foods began operating its plant in the city of Park Rapids. At the time, the old sewer system was still in use, and the city ordinance technically contained no upper limit on BOD discharge. Rather, permits to use the sewer were granted to industries after "approval of the City Council upon such conditions as are imposed in each case by the Council." No conditions were imposed upon Sota by the city to hook up to the sewer.

On November 12, 1985, the city and the engineers entered into an agreement for engineering services regarding the new system. The city received a permit for the new system from the Minnesota Pollution Control Agency (MPCA) in October of 1986. The final designs and specifications were submitted to the MPCA in March or April of 1987. In December of 1987 the city council passed a new city ordinance limiting the concentrations of waste to 400 milligrams of BOD per liter.

The actual construction of the new treatment system was completed and placed into operation in the fall of 1988. In February of 1989, when the ice went out on the ponds in the system, it was immediately discovered that the BOD capacity of the system had been exceeded and the ponds were dead. It was determined that Sota

Foods was not in compliance with the new city ordinance limiting the BOD concentration of waste introduced into the system. Sota agreed to conduct testing and study to determine how to best achieve the 400 BOD limitation by some form of pre-treatment.

The city and Sota failed to come to an agreement on pre-treatment of the waste. On May 31, 1989, the city council voted to terminate Sota Foods' use of the new system. Termination was based on Sota's noncompliance with the city ordinance limiting BODs. After formal notice, the city shut off water service to Sota Foods on the morning of June 5, 1989. Sota assured the city it would close off its sewage discharge from the manufacturing process and water service was immediately restored. Thereafter, Sota hauled its waste to Universal Foods by truck until the summer of 1991, when Universal terminated that arrangement. Sota Foods' plant has been shut down since. After Sota was disconnected from the sewer system, the problem with the ponds cleared up. In his deposition, plant manager John Smart acknowledged that at the time Sota was disconnected from the system, its discharge was not at the 400 BOD level. He also acknowledged that the limitation was and is ascertainable by Sota Foods. However, the parties disagree as to whether the city would have allowed Sota to discharge into the system even if it met the 400 BOD limitation.

Sota Foods commenced this action alleging against both the city and the engineers negligence in the design of the new system and breach of the employment contract by the engineers to build an adequate system, alleging it was a third party beneficiary of the employment contract between the city and the engineers. In its complaint against the city, Sota Foods also alleges violation of equal protection, inverse condemnation, and breach of license to use sewer.

Sota's negligence claim, as argued at the motion hearing, was based upon an assertion that even though Sota was an existing industrial user at the time the new system was built, it was improperly not identified as such. As a result, the city and the engineers failed to gather sufficient information about Sota Foods. Thus, as a direct result of the defendant's failure to contact Sota, BOD capacity sufficient for Sota Foods was not built into the system.

The city defended on the grounds of discretionary immunity, arguing that the regulation of waste and the designing and building of the new system involved executive planning decisions insulating them from liability. The engineers defended on the grounds that discretionary immunity should protect them as well as the city because they were involved in policy development. The engineers also sought an order that the city indemnify them for any liability because they were acting as employees of the city. Sota argued that its problems were caused by errors in professional and scientific judgment exercised by the engineers regarding the BOD capacity of the system and that such errors and scientific judgment are not entitled to the defense of discretionary immunity.

Both the city and the engineers moved for summary judgment arguing they were immune from suit under the doctrine of discretionary immunity. The engineers also sought, in the alternative, an order that the city indemnify them. The trial court denied the summary judgment motions of the city and the engineers.

## ISSUES

1. Did the trial court err by denying the city's defense motion for summary judgment?

2. Did the trial court err by denying the engineers' defense motion for summary judgment?

## ANALYSIS

### I.

A municipality is entitled to immediate review of an order rejecting an immunity claim, and the right of appeal extends to an order involving discretionary function immunity. *See McGovern v. City of Minneapolis,* 475 N.W.2d 71, 73 (Minn.1991); *Anderson v. City of Hopkins,* 393 N.W.2d 363 (Minn.1986). Although the engineers are not a municipality and therefore not

entitled to direct appeal as a matter of right, we will consider the merits of their appeal, as it was properly brought by notice of review. *See Kostelnik v. Kostelnik,* 367 N.W.2d 665, 669 (Minn.App.1985) (a party may raise a non-appealable order by notice of review), *pet. for rev. denied* (Minn. July 26, 1985).

■ Whether the doctrine of discretionary immunity applies is a question of law. *Snyder v. City of Minneapolis,* 441 N.W.2d 781, 786 (Minn.1989). This court is not bound by the trial court's determination of a purely legal question. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

■ The doctrine of discretionary function immunity provides for an exception to the general rule of municipal tort liability. *See* Minn.Stat. §§ 466.02, 466.03, subd. 6 (1990). In applying discretionary function immunity, the planning-operational distinction,[1] although generally recognized, should not be used in a conclusory manner.

■ After identifying the precise governmental conduct that is being challenged, "[t]he critical inquiry * * * is whether the challenged governmental conduct involved a balancing of policy objectives." *Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 722 (Minn.1988).

> Not all acts involving the exercise of judgment by agents of the government are protected as discretionary functions. *The protection afforded by the discretionary function exception does not extend to professional or scientific judgment where such judgment does not involve a balancing of policy objectives.* Instead, government conduct is protected only where the state produces evidence that the conduct was of a policy-making nature involving social, political, or economical considerations.

*Id.* (emphasis added) (citations omitted). Even where decisions require the exercise of professional judgment,

> the professional evaluation of complex factors does not "convert" an operational decision into a discretionary function, *absent a demonstration that immunity is essential to avoid judicial interference with governmental policymaking.*

*Invest Cast, Inc. v. City of Blaine,* 471 N.W.2d 368, 371 (Minn.App.1991) (quoting *Pletan v. Gaines,* 460 N.W.2d 74, 76 (Minn. App.1990), *pet. for rev. denied* (Minn. Nov. 1, 1990)) (emphasis added) (citation omitted) (tactical decisions regarding methods used to fight a fire, such as where to position fire-fighters and how to apply the water, were operational in nature and therefore unprotected, even though the decisions required the exercise of professional judgment), *pet. for rev. denied* (Minn. Aug. 1, 1991); *see also Gorecki v. County of Hennepin,* 443 N.W.2d 236, 241 (Minn.App. 1989) (employee's decision not to remove a snowbank from a bridge, where the decision was not based upon any particular policy but rather was based upon professional judgment that the snow buildup was not a problem, was not protected by discretionary immunity because the exercise of professional judgment did not involve policy considerations), *pet. for rev. denied* (Minn. Sept. 27, 1989).

■ The city analyzes Sota's claim of negligence against it in terms of the city's decision to not accept Sota Foods' waste as it was in excess of the BOD limit mandated by the city ordinance passed in December of 1987. The city argues that the decision to regulate waste discharge into its new system was a policy making decision involving the balancing of policy objectives such as protecting the health and safety of its residents. Also, the city argues the BOD limit of 400 was based upon economic considerations. The engineers analyze the claim of negligence against them in terms of the choice of design of the new system, arguing that this decision is a protected policy making decision.

Sota Foods concedes it is not challenging these particular decisions of the city and the engineers. Sota agrees these positions have merit. *See Chabot v. City of Sauk Rapids,* 422 N.W.2d 708, 710–11 (Minn.

1. *See e.g. Holmquist v. State,* 425 N.W.2d 230, 232 (Minn.1988); *Schaeffer v. State,* 444 N.W.2d 876, 879 (Minn.App.1989); *Gonzales v. Hollins,* 386 N.W.2d 842, 845 (Minn.App.1986).

1988) (city's decision concerning major capital improvements to its existing drainage system involved policy-making which required a balancing of social, political, and economic considerations and was, therefore, immune as a discretionary function). The decisions to build a new system and which design to use involved the balancing of policy objectives including economic, environmental, social, and political concerns. What Sota argues is that neither the response of the city or the engineers addresses the particular conduct Sota is claiming amounts to unprotected negligence.

Sota's negligence count is based upon the assertion that the new system is negligently undersized, alleging that the city and the engineers negligently failed to obtain information from Sota Foods regarding its sewage discharge during the planning stages of the new system. As a result of this error, Sota claims, sufficient capacity for Sota Foods was not designed into the system. Sota argues that this error was based upon the scientific and professional judgment of the engineers and therefore, discretionary immunity does not apply to this challenged conduct. *See Nusbaum*, 422 N.W.2d at 722.

The agency rules of the MPCA require that as funding is applied for, the municipality shall submit "a treatment agreement for each major contributing industry" that will discharge wastewater into the system. Minn.R. 7075.0414, subpt. 5G (1987). A "major contributing industry" is defined in the agency rules as an industrial user of a treatment facility that:

A. has a rated flow of 50,000 gallons or more per work day * * *;

B. has a rated flow greater than five percent of the total design flow to the treatment works;

C. has a total organic load of greater than five percent of the total organic load to the treatment works;

D. has in its waste before pretreatment a toxic pollutant in excess of what may be discharged to waters of the state; or

E. is found by the agency * * * either singly or in combination with other contributing industries, to interfere with the treatment plant's ability to meet effluent limitations, interfere with digester operation or biological unit process operation, impact the area required for sludge disposal, or increase sizing of the facility by five percent or more.

Minn.R. 7075.0200, subpt. 13 (1987).

Sota Foods began operating in the city in November of 1985. In October of 1986 the city received a permit from the MPCA to construct the new waste water treatment facility. The following language appears on the last page of the permit:

Immediately following the issuance of this permit, the [city] shall establish and implement a procedure to obtain from *all major contributors*, specific information on the quality and quantity of effluents introduced by such industrial contributors and their impact on the overall municipal discharge. This information shall be reported to the Director (Attention: Enforcement Section) on a quarterly basis.

(Emphasis added). The permit contains a definition of a "major contributing industry" that is consistent with the definition provided in Minn.R. 7075.0200, subpt. 13.

Sota Foods claims that it was a major contributing industry at the time the city received the permit and during the constructing of the new system. At the motion hearing, Sota conceded it was not contributing five percent of the flow into the system but claims it was contributing far more than five percent of the total organic waste into the system and therefore, it meets the definition of a major contributing industry. *See* Minn.R. 7075.0200, subpt. 13C. As such, Sota argues, the city and the engineers were required to gather information regarding the nature of Sota's discharge into the system. *See* Minn.R. 7075.0414, subpt. 5G (1987).

The challenged conduct is the claimed failure of the defendants to identify Sota as a major contributor as required by agency rules thereby resulting in the failure to obtain sufficient information from Sota Foods, thereby resulting in undersizing of the new system. There are disputed facts

as to who was responsible for identifying a major contributing industry, what the process is for identifying a major contributing industry, and what the consequences are once a major contributing industry is identified. These determinations could be based, at least in part, "upon the exercise of professional and scientific judgment." On the other hand, they could involve "implementation of policy." We agree with the trial court there are too many essential material facts in dispute to resolve the issue of immunity on summary judgment. Denial of the city's defense motion for summary judgment was appropriate. We agree with the trial court there is a need for further discovery and development to resolve this issue.

The parties even dispute whether Sota was a "major contributing industry" as defined in the agency rules and the permit. The trial court found it was unable to make this determination on a motion. Upon the record before us, we agree.

On one hand, a "letter of intent" (regarding its waste) was not obtained from Sota Foods. On the other hand, according to Tom Augustin, based on the information they had in February of 1987, the engineers were not required to contact Sota Foods. Respondents point out that John Smart, the general manager of Sota Foods, attended some of the public meetings regarding the new system but never raised any concerns regarding Sota's BOD output or provided any information regarding the BOD capacity of the new system. The issue of "major contributing industry" is just one of several the trial court correctly found was in dispute.

We note the issue of negligence was not addressed by the trial court, and our affirmance of the denial for summary judgment for the city does not address the issue of negligence either. If it later is determined, after further development of the facts and legal theories, that immunity does not apply to the city, the issue of negligence still has to be decided. No favorable or unfavorable inference can be drawn as to the merit of any party's position on negligence at this point.

## II.

■ We also affirm the denial of the motion for summary judgment brought by the engineers. The engineers argue that discretionary immunity, as a matter of law, protects them as quasi-employees of the city.

> Subject to the limitations [set out in Chapter 466, including discretionary function immunity], *every municipality is subject to liability for its torts and those of its officers, employees and agents* acting within the scope of their employment or duties whether arising out of a governmental or proprietary function.

Minn.Stat. § 466.02 (1990) (emphasis added). The definitions section of Chapter 466, the discretionary immunity statute, define "employee, officer, or agent" in relevant part as follows:

> For the purposes of [Chapter 466], "employee," "officer," or "agent" means a present or former employee, officer, or agent of a municipality, *or other person* acting on behalf of the municipality in an official capacity, temporarily or permanently, with or without compensation, *but does not include an independent contractor.*

Minn.Stat. § 466.01, subd. 6 (1990) (emphasis added).

The trial court concluded the engineers were, as a matter of law, independent contractors and therefore, not protected by municipality immunity even if it should turn out that the city is entitled to immunity. *See id.* Although we affirm the denial of the engineers' motion for summary judgment, we find there are material facts in dispute and the engineers should not, at this point, be declared void of discretionary immunity as a matter of law. They should have the chance to prove, if they can, that they qualify for immunity under the phrase "or other person" as contained in Minn. Stat. § 466.01, subd. 6.

Again, we make no inference either way as to the strength of the engineers' position. However, the question of the role of the engineers is not ripe for summary judg-

ment. The engineers had a separate contract for engineering services in connection with the wastewater project which included a description and schedule for payment on performance of the contract. This weighs in favor of independent contractor status. On the other hand, these engineers have readily performed jobs for this city for over 30 years, and had such a close association with the city that they could appear to be, for all practical purposes, a de facto agent/employee of the city. Upon review of the record, it is not clear how much supervision and control the city actually had over the engineers. The status of the engineers, whether employee, agent, independent contractor, "or other person," as defined in section 466.01, subdivision 6, needs further development. Thus, we reverse the trial court's conclusion that, as a matter of law, the engineers were independent contractors and could never qualify for discretionary immunity. We direct this issue to remain open until the evidence is in. The trial court may, at that time, make a legal determination on the status of the engineers relative to discretionary immunity. If the trial court determines the engineers were independent contractors and discretionary immunity does not apply to them, the issue of negligence will have to be resolved by the factfinder.

The engineers also sought, in the alternative, an order for indemnification. This issue also turns on whether the engineers were employees or independent contractors. A municipality must defend and indemnify its "officers and employees" for damages claimed against the officer or employee as long as the officer or employee was acting within the performance of the duties of the position and was not guilty of malfeasance, willful neglect of duty, or bad faith. Minn.Stat. § 466.07, subd. 1 (1990). The definition of "officer" or "employee," as contained in Chapter 466, does not include an independent contractor. See Minn.Stat. § 466.01, subd. 6. As discussed, we find unresolved factual disputes in the record which prevent summary judgment determination of discretionary immunity for the engineers. Thus their right to indemnification must await

the determination of their identification as either protected municipal employees (on this project) or not.

## DECISION

There are material facts in dispute which prevent resolution of the issue of discretionary immunity as to both the city and the engineers. Therefore, we affirm the denial of the defense motions for summary judgment brought by the city and the engineers. However, we reverse the trial court on its determination that the engineers are independent contractors as a matter of law. Material facts remain disputed, and this issue must remain open until the evidence is in.

The only issue addressed by the trial court in its order and memorandum was discretionary immunity, which only applies to provide immunity from suit for tort liability. *See* Minn.Chap. 466 (1990). No other issues were decided by the trial court. The merits of the other claims brought by Sota Foods are not before this court and are not ripe for review.

Affirmed in part, reversed in part.