Matthew **WATSON, a minor by his mother and natural guardian, June HANSON, Respondent,**

v.

**METROPOLITAN TRANSIT COMMISSION, Appellant.**

No. C5–95–1052.

Court of Appeals of Minnesota.

Dec. 5, 1995.

Review Granted Feb. 13, 1996.

Krister D. Johnson, Johnson & Donaldson, St. Cloud, Geoffrey J. Gempeler, St. Cloud, for Respondent.

Frederick C. Brown, Bryan J. Leary, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Appellant.

Considered and decided by DAVIES, P.J., and RANDALL and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant contends the district court erred in denying summary judgment on the basis

of discretionary and official immunity. The district court certified to this court the question whether discretionary immunity should apply here to shield appellant from suit. We answer the certified question in the negative and affirm the denial of summary judgment on official immunity.

## FACTS

Respondent Matthew Watson alleges the following facts, which we accept as true for purposes of reviewing summary judgment. On April 16, 1994, Watson and a friend boarded one of appellant Metropolitan Transit Commission's (the MTC) express buses at the Mall of America. This "articulated bus" was 60 feet in length with a bendable midsection. Watson and his friend seated themselves at the very rear of the bus. After they were seated, approximately 15 youths boarded the bus and seated themselves near Watson and his friend.

Shortly after the bus left the Mall of America, the group of 15 began accosting Watson and his friend with profanity and rude comments; then the group began hitting them. Watson and his friend had said nothing to provoke the attack. When Watson's friend sprayed the gang with mace, some ran to the front of the bus; others put bandannas around their faces and remained in the back saying, "We're going to kill you guys." Watson saw the gang members pull out three butcher knives and wield them toward Watson and his friend.

At this point, Watson stood up, pulled the emergency cord, and screamed for the bus driver to "Stop the bus!" Watson heard no response from the bus driver. When the bus driver took no action and the gang continued threatening them with knives, Watson's friend decided to escape by jumping out the window of the bus. Not knowing what to do, Watson remained on the bus. The gang rushed toward him and threw him out of the window on the cloverleaf from northbound Highway 77 to westbound Highway 62. Watson remembers feeling two hands on his arm and back, being thrown out of the bus window, and then waking up in the hospital.

According to the bus driver, shortly after leaving the Mall of America, he heard a passenger shout that a fight had broken out on the bus. When he looked in his rear view mirror, all he could see was a group of people standing in the back of the bus. He could not see the fight, but heard a lot of yelling and commotion in the back of the bus. As part of standard operating procedure, the driver reported the fight to the transit control station; they notified the police and instructed him to continue on Highway 77 to westbound Highway 62, and then to northbound 35W where the police would meet the bus at the bus stop at 35W north and Lake Street. The bus driver followed those orders.

En route to the interception point, the bus driver smelled the mace from the back of the bus and also heard passengers calling for him to stop. He had the passengers in the front of the bus open the windows to air out the mace, and continued on toward his Lake Street destination. Shortly thereafter, a passenger came forward to inform the bus driver that a person had jumped out of a window. The bus driver stated, "At this point there is little I can do about any person being thrown so I proceeded up to Lake Street where the police were waiting and when I got there I filed the people off." In his statement to police, the bus driver said he did not see anyone jump or get thrown out of the bus window.

Watson, through his mother, initiated this action for damages. The MTC moved for summary judgment. The district court denied summary judgment on the basis of official and discretionary immunity and certified to this court the question whether discretionary immunity applied to the MTC.

## ISSUES

1. CERTIFIED QUESTION: Does the doctrine of statutory discretionary immunity apply and shield the MTC from a suit in negligence by a passenger seeking recovery of money damages for injuries sustained in an assault by another passenger?

2. Did the district court err in denying summary judgment on the MTC's claim of official immunity?

## ANALYSIS

■ The district court denied the MTC's motion for summary judgment and implicitly found the MTC ineligible for discretionary and official immunity from suit. On appeal from summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992).

### 1. Certified question: discretionary immunity

■ Minnesota law provides immunity from liability for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1994). The application of immunity is "limited to decisions which involve the balancing of competing public policy considerations." *Holmquist v. State,* 425 N.W.2d 230, 231–32 (Minn.1988).

■ Discretionary immunity covers "planning" decisions, which involve consideration of public policy, but does not cover "operational" decisions, which are the day-to-day ministerial decisions. *Olson v. Ramsey County,* 509 N.W.2d 368, 371 (Minn.1993) (citing *Nusbaum v. Blue Earth County,* 422 N.W.2d 713, 720–22 (Minn.1988)). In order to distinguish between planning and operational decisions, the court must ask: Did the challenged conduct involve a balancing of policy issues? *Nusbaum,* 422 N.W.2d at 722.

> The protection afforded by the discretionary function exception does not extend to professional or scientific judgment where such judgment does not involve a balancing of policy objectives. Instead, government conduct is protected only where the state produces evidence that the conduct was of a policy-making nature involving social, political, or economic considerations.

*Id.* (citations omitted). In addition, discretionary immunity extends to conduct implementing a policy decision if "the consequential conduct itself involves the balancing of public policy considerations in the formulation of the policy." *Pletan v. Gaines,* 494 N.W.2d 38, 44 (Minn.1992).

■ The MTC invokes immunity here because it believes that Watson is attacking the MTC's procedure for dealing with these types of emergencies, a procedure that is based upon social and economic policy considerations. The MTC's procedure for bus drivers to respond to incidents on the bus includes calling the control station to report the incident and waiting for instructions. If the situation requires, the control station dispatches the police to meet the bus and address the situation. The MTC bases its procedure on the theory that requiring the bus driver to "inject him/herself into a fight between passengers" could result in injury to the driver and leave no one to operate the bus, thus endangering all the passengers. Because this security procedure is the product of policy considerations, the MTC is correct in asserting that the procedure is protected by discretionary immunity. *Nusbaum,* 422 N.W.2d at 722.

Watson has not attacked that policy, however. He claims the MTC was negligent in implementing that policy, and contends the MTC could have taken preventive or curative measures to protect him. Essentially, Watson is challenging a number of the MTC's *operational* decisions, claiming those decisions involve professional judgment and are not covered by discretionary immunity because they do not involve balancing of policy considerations. *Id.; cf. Olson,* 509 N.W.2d at 371 (making and implementing case plan that was tailored to client's specific circumstances were operational decisions not protected by discretionary immunity); *Invest Cast, Inc. v. City of Blaine,* 471 N.W.2d 368, 371 (Minn. App.1991) (holding that firefighters' tactical decisions about how to fight fires require professional judgment and are not policy decisions covered by discretionary immunity), *review denied* (Minn. Aug. 1, 1991).

■ We focus first on the decisions of the dispatcher who instructed police to meet the bus at 35W and Lake Street. That interception point was many miles and minutes away from the fight that was already in progress. The MTC might have achieved the same safety goals by dispatching the police to meet the bus at a location before 35W and Lake

Street. The MTC has shown no *policy* reason, no balancing of interests before routing the driver all the way from Bloomington to Lake Street for police assistance. Consequently, the dispatcher's operational decisions are not protected by discretionary immunity. *Cf. Hansen v. City of St. Paul*, 298 Minn. 205, 209–10, 214 N.W.2d 346, 349 (1974) (holding city liable in tort for permitting dogs it knew to be dangerous, vicious, and impoundable to prowl uncontrolled on public sidewalks; when city knew of danger and waited too long to apprehend the dogs, city was liable for damages to victim of attack).

Next, we consider the bus driver's decisions and conduct. Except for notifying the control station, the bus driver took no action to avoid or avert the situation. At the time the bus left the mall, the driver did not perceive the risk involved when 15 gang members boarded the bus. Nor did he request additional security to ride along from the mall. After the fight broke out, the driver ignored Watson's cries for help. The driver never addressed the bus by loud speakers to warn the gang that police had been notified.

The MTC has shown no relation between these decisions and the MTC's policies about passenger and driver safety. The driver simply made operational decisions as he performed his job duties. The method in which he carried out those duties involved "tactical decisions" that did not have "larger policy implications." *See Invest Cast, Inc.*, 471 N.W.2d at 371 (when evaluating claim of discretionary immunity, court distinguished between policy decisions and tactical decisions about how to fight a fire). Discretionary immunity does not cover these operational decisions. *Id.*

Furthermore, even though policy implementation may also be shielded from suit, the MTC's conduct here does not qualify, because the MTC's decisions in implementing the security procedure did not "involve[ ] the balancing of public policy considerations." *Pletan*, 494 N.W.2d at 44.

 This case does not call into question the basic safety considerations that the MTC has balanced in creating its security procedures for bus drivers to follow. Watson challenges the MTC's judgment in implementing those procedures through operational decisions that did not involve policy and that essentially left an assault victim helpless and trapped in the back of the bus. Discretionary immunity does not shield the MTC from suit.

### 2. Official immunity [1]

"[A] public official charged by law with duties which call for exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong."

*Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn.1988) (quoting *Susla v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)). The primary purpose of official immunity is "to insure that the threat of potential personal liability does not unduly inhibit the exercise of discretion required of public officials in the discharge of their duties." *Holmquist*, 425 N.W.2d at 233 n. 1. Law enforcement officers may be protected by official immunity. *Elwood*, 423 N.W.2d at 678.

 Official immunity involves discretionary decisions made on an operational, rather than a policymaking, level. *Pletan*, 494 N.W.2d at 40. Operational decisions are "something more than the performance of 'ministerial' duties." *Id.* Ministerial duties are "absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Cook v. Trovatten* 200 Minn. 221, 224, 274 N.W. 165, 167 (1937), *quoted in Elwood*, 423

---

1. Watson contends the MTC may not raise the issue of official immunity on appeal because the district court certified only the discretionary immunity question. We disagree. The district court denied summary judgment here on both of the MTC's immunity claims. Orders denying summary judgment are appealable when the motion was based upon a claim of immunity from suit. *Anderson v. City of Hopkins*, 393 N.W.2d 363, 364 (Minn.1986). The fact that the district court certified only the discretionary immunity question did not preclude the MTC from appealing the official immunity question independently in its notice of appeal. The official immunity question is properly before this court for review.

N.W.2d at 677. Police officers are not generally "ministerial officers," because their duties are often executive in nature and involve discretionary decisions. *Elwood,* 423 N.W.2d at 678. "Whether an officer's conduct merits immunity nevertheless turns on the facts of each case." *Id.* An emergency is not essential for official immunity to apply. *Duellman v. Erwin,* 522 N.W.2d 377, 380 (Minn.App.1994), *review denied* (Minn. Dec. 20, 1994).

■ The MTC contends that, by instructing the bus to proceed to 35W and Lake Street, the dispatcher, an MTC police officer, made a discretionary operational decision that is entitled to official immunity. At first blush, the dispatcher's decisions would seem to be protected by official immunity because the decisions seemed to involve the dispatcher's discretion and judgment. *Pletan,* 494 N.W.2d at 40.

The problem, however, is that the record contains no evidence regarding what the dispatcher considered when making the decision to send the bus to 35W and Lake Street. The dispatcher may have made a discretionary decision as to the interception point, in which case official immunity would apply. *Id.* In the alternative, however, the dispatcher may have routed the bus into South Minneapolis because the MTC has a set guideline requiring all police interceptions from a certain region to occur at that point, in which case the decision may have been ministerial and outside the shield of official immunity. *See Elwood,* 423 N.W.2d at 677 (ministerial decisions involve fixed and designated facts and are not protected by official immunity).

The court could only decide this issue if it had these facts in the record. As the record stands, however, an issue of material fact about official immunity exists over how the dispatcher made the interception point decision. The district court properly denied summary judgment on the MTC's claim of MTC official immunity.

**DECISION**

The doctrine of statutory discretionary immunity does not apply to shield the MTC from all allegations that might be raised in this negligence suit because the MTC's operational decisions do not involve balancing policy considerations. The district court properly denied summary judgment on the entirety of the MTC's claim of official immunity because issues of material fact still remain.

**Certified question answered in the negative; affirmed.**

DAVIES, Judge (concurring specially).

I concur generally with the majority opinion, but choose to write separately out of concern that, on remand, the district court may misinterpret the decision.

The problem is that the district court treated the immunity issue as a single question relating to the case as a whole, rather than as a series of questions, separately evaluating MTC's immunity as to each of its alleged 15–plus missteps.[2] With the issue presented to us as a single question, our decision must be against immunity—and for the case going forward—if even one of the negligent acts alleged is outside the MTC's immunity protection and though immunity may bar recovery on almost all the allegedly negligent acts.

Had the district court addressed the immunity question separately as to each of the allegedly negligent acts, our answer on appeal would have been a mixture of yes and no answers. The majority opinion suggests the answers to some of those 15–plus questions, but without a record basis for doing so. I want to make explicit that, on remand, the district court must itself rule on immunity as to each suggested basis for liability and limit the trial to only those claims on which the MTC does not enjoy immunity. This may, consequently, be one of the least helpful "certified question" decisions in the history of this court.

2. Respondent's brief includes a list of 15 allegedly faulty MTC decisions on which liability might be based. Respondent then suggests that even that is "not intended to be an exhaustive list."